IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT

CHARLES KIMLER                                                                    PLAINTIFF

VS.                                                      CIVIL ACTION NO. A240222-67

DIVERSIFIED ELEVATOR SERVICE AND
EQUIPMENT COMPANY, INC.; ELEVATED
TECHNOLOGIES, INC., f/k/a ELEVATOR
SERVICE, INC.; ELEVATOR SERVICE, INC.;
BRYAN HERNANDEZ, AN INDIVIDUAL;
NIDEC; NIDEC MOTOR CORPORATION;
MOTION CONTROL ENGINEERING, INC.;
NIDEC MOTION CONTROL;
AND JOHN DOES A THROUGH Z                                              DEFENDANTS



FILED

APR 22 2022

CONNIE LADNER
CIRCUIT CLERK
By _____ D.C.

---

## COMPLAINT
### (JURY TRIAL REQUESTED)

Plaintiff Charles Kimler, by and through the undersigned counsel, files this Complaint against the Defendants, Diversified Elevator Service and Equipment Company., Inc.; Elevated Technologies, Inc., f/k/a Elevator Service, Inc.; Elevator Service, Inc.; Bryan Hernandez, an Individual; Nidec; Nidec Motor Corporation; Motion Control Engineering, Inc.; Nidec Motion Control; and John Does A-Z, and for cause against said Defendants would respectively show unto the Court as follows:

### PARTIES

1.  The Plaintiff, Charles Kimler, is an adult resident citizen of Harrison County, Mississippi.

2.  Defendant Diversified Elevator Service and Equipment Company, Inc., is a corporation doing business in Harrison County, Mississippi, that may be served with process through its Registered Agent, Christopher Walker, 108 Distribution Drive, Suite B, Richland, Mississippi 39218.

1

EXHIBIT "A"

3.   Defendant Elevated Technologies, Inc., f/k/a Elevator Service, Inc., is a corporation doing business in Harrison County, Mississippi, that may be served with process through its Registered Agent InCorp Services, Inc., 302 Enterprise Dr., Suite A, Oxford, Mississippi 38655.

4.   Defendant Elevator Service, Inc., is a current or former corporation that was, at all relevant times, doing business in Harrison County, Mississippi, and that may be served with process through its Registered Agent InCorp Services, Inc., 302 Enterprise Dr., Suite A, Oxford, MS 38655.

5.   Defendant Bryan Hernandez is, upon information and belief, an adult resident citizen of Harrison County, Mississippi.

6.   Defendant Nidec is a business of unknown corporate structure that, upon information and belief, is and was at all relevant times the parent company of Nidec Motor Corporation, Motion Control Engineering, and/or Nidec Motion Control.

7.   Defendant Nidec Motor Corporation is a Delaware corporation with its principal place of business located at 8050 West Florissant Avenue, St. Louis, Missouri 63136, who is doing business in Mississippi, and may be served through its Registered Agent, C.T. Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.

8.   Defendant Motion Control Engineering, Inc., is, upon information and belief, a part of or division of Nidec Motor Corporation. Defendant, Motion Control Engineering, Inc., is a foreign corporation with its principal place of business located in the State of California. Defendant Motion Control Engineering, Inc., is not authorized to conduct business in Mississippi, but is, in fact conducting business in Mississippi and therefore may be served with

2

process by and through its Registered Agent, CT Corporation System, 330 N Brand Blvd., Suite 700, Glendale, CA 91203.

9.   Defendant Nidec Motion Control is a business of unknown corporate structure. Upon information and belief, Defendant Nidec Motion Control is affiliated with and/or a part of or division of Defendant Nidec Motor Corporation.

10. Defendants John Does A-Z are parties to this action whose identities are unknown at this time, but when those parties' true identities are discovered, the process and all pleadings and proceedings of this action will be amended by substituting their true names and giving proper notice to these parties, pursuant to Rule 9 of the Mississippi Rules of Civil Procedure. These Defendants consist of other agents or services to the Plaintiff and whose negligence, breach of the standard care, or other tortious conduct caused or contributed to the Plaintiff's damages and injuries.

## JURISDICTION AND VENUE

11. This action arises out of the negligence, gross negligence, strict liability, and/or breach of contract by the Defendants in Biloxi, Harrison County, Mississippi.

12. This Court has subject matter jurisdiction pursuant to the Mississippi Constitution and the Laws of the State of Mississippi including Article 6 Section 156 Mississippi Constitution 1890 and/or Section 9-7-81 of Mississippi Code 1972 and this court has jurisdiction of the parties pursuant to the laws of Mississippi.

13. This Court may exercise personal jurisdiction over the Defendants as they transacted business in Mississippi and have sufficient minimum contacts with the State of Mississippi to subject those Defendants to the jurisdiction of this Court.

14. Venue is appropriate in the Second Judicial District of the Circuit Court of

Harrison County, Mississippi, as this is the County where substantial alleged acts or omission occurred and where substantial events that caused Plaintiff's injury occurred. In addition, Defendant Bryan Hernandez is a resident citizen of Harrison County, Mississippi. See Miss. Code Ann. § 11-11-3.

## CONDITIONS PRECEDENT

15. All conditions precedent to the right of the Plaintiff to bring or maintain the claims asserted herein have been performed, have occurred, or have been waived.

## ACTS OF AGENTS/EMPLOYERS/RATIFICATION

16. Each act or omission by each Defendant was committed by officers, managers, superintendents, supervisors, agents, servants, authorized representatives, or employees acting in their capacities as a principal or vice-principal while in the course and scope of their employment and/or with full authority of Defendants and/or such act was later ratified, approved, or adopted by each Defendant.

## FACTS AND BACKGROUND

17. On or about May 7, 2019, Plaintiff was visiting the Biloxi VA Medical Center (hereafter "Medical Center") located at 400 Veterans Boulevard, Biloxi, Harrison County, Mississippi, for an appointment with his primary care physician.

18. Plaintiff was on the third floor of the Medical Center when he stepped into the elevator and pressed the "down" button in the elevator when the elevator, suddenly and without warning, dropped and jolted, causing Plaintiff severe injuries.

19. Upon information and belief, the elevator in which Plaintiff was injured was

4

Elevator P1 in Building 3 of the Medical Center (hereafter "the elevator") and was a Motion 4000 Traction Elevator, model number M4000-AC-01.

20. The Medical Center, by and through its owner and operator United States Department of Veterans Affair (hereafter "VA"), had contracted with Elevator Service, Inc., to provide preventive maintenance on the elevator effective April 1, 2018. A copy of the contract between the VA and Elevator Service, Inc. (hereafter "the contract") is attached hereto as Exhibit "A" and incorporated by reference.

21. Pursuant to the contract between the VA and Elevator Service, Inc., Elevator Service, Inc., was required to maintain and service the elevators at the Medical Center and was vested with the authority to place elevators in service and/or to take elevators out of service. Elevator Service, Inc., was also vested with the authority to place signage indicating whether an elevator was out of service.

22. In or around 2020, Elevator Service, Inc., changed its name to Elevated Technologies, Inc., which continued to carry out the contract between the VA and Elevator Service, Inc. (Elevator Service, Inc., and Elevated Technologies, Inc., are hereafter collectively referred to as "Elevated Technologies".)

23. The VA is currently exercising its third option year of the contract with Elevated Technologies.

24. The contract places certain requirements on Elevated Technologies, including the following:

> 1. REQUIREMENTS: This contract covers full maintenance which includes regular and systematic inspection of each of the elevators and dumbwaiters listed in the Schedule of Elevators and Dumbwaiters. During the inspection visits, the Contractor shall clean, adjust and lubricate the equipment as specified below, determine the nature and extent of any trouble, and maintenance

5

required to restore the elevators to safe and satisfactory service, and if conditions warrant, furnish and install parts listed below.

(Exhibit A, p. 5)

5.  INSPECTIONS:
(a) All passenger and service type elevators shall be inspected weekly; a minimum of one hour per elevator per inspection is required.  Inspection shall be made each week.  If a holiday falls on the scheduled day of inspection, the required inspection will be performed on the following workday, records of inspection shall be submitted to the COTR on the date performed.

(Exhibit A, p. 6)

12.   PARTS TO BE FURNISHED AN INSTALLED OR REPAIRED: In accordance with standard elevator industry practice, this is a full maintenance contract. The contractor will accept these elevators "as is".   Except as listed below, no components are excluded from the requirements of this contract.

(a)    The Contractor shall furnish and install or repair when and as necessary, machine hydraulic pumps, motor generators, controllers, selectors, worms, gears, thrusts, windings, commutators, hydraulic pump "VEE" belts and pulleys, hydraulic valve components and coils, circuits, magnet frames, relays, contactors control fuses, cams, car door and hoistway door hangers, tracks and governors, push buttons, annunicators, hail lanterns and indicators, lamp replacements in signal systems and all other elevator signal and accessory equipment complete.  All parts shall be of the original manufacturer's design and specification or equal thereto.

(Exhibit A, p. 7)

14.  REPORT OF SERVICES: Upon completion of the services, the contractor shall report to the Engineering Officer or designee, and a written report of services performed shall be furnished the Engineering Officer or designee.  Such reports shall advise of any repairs or repair parts not required to be furnished under the contract that are necessary to maintain the equipment in perfect operating condition.

15.  RECORDS: The contractor shall maintain a complete orderly and chronological file including drawings, complete parts list, and

copies of all reports as required by these specifications. A record of all call backs and repairs shall be kept by the contractor indicating any difficulty experiences and the corrective measures taken to eliminate these difficulties.

16.    CORRECTION OF DEFICIENCIES FOUND DURING ELEVATOR INSPECTIONS: The full maintenance contractor will be furnished a list of deficiencies that were found during the semi- or annual inspection performed by the inspection contractor. The full maintenance contractor will correct all deficiencies noted within 30 days after receipt of the reports.

(Exhibit A, p. 8)

25. Pursuant to the contract, Elevated Technologies was specifically responsible for "full maintenance which includes regular and systematic inspection of each of the elevators and dumbwaiters and any other services necessary to accomplish maintenance and inspections." (Exhibit A, p. 9)

26. Elevated Technologies entered into a subcontract with Defendant Diversified Elevators Service and Equipment Company, Inc. (hereafter "Diversified") pursuant to a Sub-Contract Agreement dated April 1, 2018 (hereafter "the agreement"), a copy of which is attached as Exhibit "B" and incorporated by reference.

27. Pursuant to the agreement, Diversified agreed to furnish necessary personnel, service materials, equipment, tools, incidental engineering services, and to do all things necessary to the delivery of all tasks, items, and deliverables to perform under the general services of the agreement. (Exhibit B, p. 2)

28. Diversified further agreed to use its best efforts to accomplish all the work identified in the agreement. (Exhibit B, p. 3)

29. Pursuant to the contract and the agreement, Elevated Technologies and/or Diversified had all responsibility for the maintenance and repair of the elevators at

7

the Medical Center, including the elevator in which Plaintiff was injured.

30. At all relevant times, Defendant Bryan Hernandez ("Hernandez") was the primary on-site technician at the Medical Center and responsible for the maintenance and inspection of the elevator.

31. The elevator had a history of mechanical issues prior to May 7, 2019, that had been reported to the Defendants. In addition, the Defendants had a failed history of attempting to repair the elevator prior to May 7, 2019, after repeatedly being put on notice of concerns about the elevator.

32. On or about December 5, 2018, December 14, 2018, and January17, 2019, Defendant Hernandez allegedly inspected the elevator.

33. On or about February 7, 2019, Defendant Hernandez allegedly inspected the elevator and replaced a part on the elevator's BR relay.

34. On or about February 26, 2019, March 13, 2019, and April 15, 2019, Defendant Hernandez again allegedly inspected the elevator.

35. On or about April 22, 2019, a customer reported that the elevator was intermittingly shutting down. Defendant Hernandez allegedly went through the controls and left the elevator down for more testing.

36. On or about April 23, 2019, Defendant Hernandez replaced the door lock on the elevator and made an adjustment to the guide shoes. Defendant Hernandez, after allegedly observing normal operations for one hour, placed the elevator back in service.

37. In the weeks leading to May 7, 2019, several individuals at the Medical Center reported issues with the elevator and that it was stopping "hard," and Defendant Hernandez was informed of these complaints. In particular, when the elevator was going down to the ground

floor, it would drop very quickly and then come to a sudden stop.

38. On May 7, 2019, subsequent to Plaintiff's reporting of an issue with the elevator, Defendant Hernandez again shut down the elevator for an intermitting drive issue.

39. On or about May 15, 2019, Defendant Hernandez installed a keypad drive on the elevator but was still waiting on cable for the keypad.

40. On or about May 17, 2019, Defendant Hernandez made some adjustments to the elevator's clutch and ran the elevator for two (2) hours on test mode.

41. Finally, on or about May 20, 2019, Defendant Hernandez put the elevator back in service; however, the very next day, Defendant Hernandez again shut down the elevator due to multiple drive errors.

42. Defendant Hernandez, in consultation with engineers from Defendant Motion Control Engineering, finally conducted an intensive trouble shooting and determined that the elevator's drive needed to be replaced.

43. On or about June 10, 2019, Defendant Hernandez removed the elevator's old drive and installed a new drive. On June 11, 2019, Defendant Hernandez started adjusting the drive and on June 12, 2019, ran the elevator in test mode.

44. On or about June 13, 2019, and again on June 14, 2019, Defendant Hernandez was still adjusting the drive on the elevator. On or about June 17, 2019, Defendant Hernandez was trouble shooting the elevator's controls. On or about June 18, 2019, Defendant Hernandez was again troubleshooting the elevator's drive.

45. On or about June 19, 2019, Defendant Hernandez adjusted the software for the drive on the elevator and installed selector guides. On or about June 20, 2019, Defendant Hernandez again tested the elevator but was still waiting on software.

46. On or about June 28, 2019, Defendant Hernandez installed software on the elevator and finally returned the elevator back to service.

47. The elevator remained out of use, therefore, for all but one day from the date of Plaintiff's incident on May 7, 2019, to June 28, 2019.

## COUNT I:

## NEGLIGENCE

**(As to Defendants Elevated Technologies, Diversified, Hernandez, and John Does A-Z)**

48. Plaintiff reaffirms and realleges each of the allegations in the above paragraphs in the Complaint.

49. At all times, the Defendants, through their agents and employees, owed a duty to Plaintiff to, and were required to, perform to the standard of acceptable professional practice in the profession and specialty of each such agent and/or employee in the community in which each such agent and/or employee practices or in a similar community at the time of Plaintiff's injuries.

50. The Defendants breached their duty to Plaintiff and were negligent, including in one or more of the following respects:

    a.    Failure to exercise reasonable care to keep the elevator in a reasonably safe condition;

    b.    Failure to warn Plaintiff of dangerous conditions not readily apparent to Plaintiff but which Defendants knew or should have known in the exercise of reasonable care;

    c.    Failure to properly maintain the area before allowing patrons to enter the elevator;

    d.    Failure to properly post warnings;

e.      Failure to provide proper maintenance of the elevator at issue;

f.      Failure to provide proper inspections of the elevator at issue;

g.      Failure to provide proper repairs to the elevator at issue;

h.      Failure to take the elevator at issue out of service while the elevator was in an unreasonably safe condition;

i.      Failure to properly train its employees and/or agents;

j.      Failure to properly supervise its employees and/or agents;

k.      Failure to ensure that their employees and/or agents were competent for the duties to be performed; and

l.      Other acts or omissions that will be shown at the trial of this cause.

51. The negligence of these Defendants set forth hereinabove combined and concurred to proximately cause the injuries suffered by Plaintiff.

52. As a proximate result of the Defendants' negligence, Plaintiff has suffered, and will continue to suffer, substantial injuries and damages.

## COUNT II:

### GROSS NEGLIGENCE/RECKLESS DISREGARD

**(As to Defendants Elevated Technologies, Diversified, Hernandez, and John Does A-Z)**

53. Plaintiff reaffirms and realleges each of the allegations in the above paragraphs in the Complaint.

54. At the time and place of the subject accident, the Defendants owed a duty to Plaintiff to keep the elevator in a reasonably safe condition and to warn of dangerous conditions which were not readily apparent to Plaintiff.

55. The elevator at issue had a history of prior mechanical problems and malfunctions

which were known to the Defendants.

56. The Defendants failed to properly inspect, maintain, and/or repair the elevator in question despite their knowledge of its unreasonably dangerous condition.

57. As such, the Defendants failed to keep the elevator in a reasonably safe condition and/or failed to warn Plaintiff of a dangerous condition, which was not readily apparent to Plaintiff, and this breach was the proximate cause of the injuries to Plaintiff.

58. At the time and place of the specified accident, Defendants had knowledge or and/or caused the condition which led to the actions that were the proximate cause of the injuries to Plaintiff, entitling him to compensatory damages.

59. The Defendants' failure to keep the elevator in a reasonably safe condition, properly perform inspections, maintenance, and needed repairs, and their failure to warn of the elevator's dangerous condition despite notice discloses a reckless indifference to the consequences of their action/inaction without the exertion of any substantial effort to avoid them those consequences.

60. The gross negligence and reckless disregard of the Defendants as set forth hereinabove combined and concurred to proximately cause the injuries suffered by the Plaintiffs.

61. The Defendants' conduct, acts, and/or omissions as set forth above demonstrate actual malice or gross negligence that evinces willful, wanton, or reckless disregard for the safety of others and thus warrants the imposition of punitive damages, as contemplated by Miss. Code Ann. § 11-1-65 and/or Mississippi law.

## COUNT III:

## VICARIOUS LIABILITY

### (As to Defendants Elevated Technologies, Diversified, Hernandez, and John Does A-Z)

62. Plaintiff reaffirms and realleges each of the allegations in the above paragraphs in

the Complaint.

63. At all relevant times, all employees, agents, representatives, officers, managers, supervisors, superintendents, and servants of Defendants who committed any breach of contract, duty, or standard of care or any negligent or tortious action, or inaction, were acting within the course and scope of their employment for their respective Defendant employers.

64. The Defendants ratified, condoned, accepted, and adopted all relevant actions or inactions of their respective employees, agents, representatives, officers, managers, supervisors, superintendents, and servants.

65. Further, the actual and/or constructive knowledge regarding the unreasonably dangerous condition of the elevator in question of all employees, agents, representatives, officers, managers, supervisors, superintendents, and servants of the Defendants was imputed to the Defendants as the employees, agents, representatives, officers, managers, supervisors, superintendents, and servants involved were acting within the course and scope of their employment for their respective Defendant employers.

66. The Defendants are liable to Plaintiff for the Defendants' breaches of contracts, negligence, and gross negligence. Further, the Defendants are liable to Plaintiff for the breaches of contracts, negligence, and gross negligence committed by the employees, agents, representatives, officers, managers, supervisors, superintendents, and servants of the Defendants.

67. Specifically, the employees, agents, representatives, officers, managers, supervisors, superintendents, and servants of the Defendants breached their duty to Plaintiff in one or more of the following respects:

    a.    Failure to exercise reasonable care to keep the elevator in a reasonably safe condition;

b.    Failure to warn Plaintiff of dangerous conditions not readily apparent to

Plaintiff, but which Defendants knew or should have known in the exercise of

reasonable care;

c.    Failure to properly maintain the elevator before allowing its patrons to enter;

d.    Failure to properly post warnings;

e.    Failure to provide proper maintenance of the elevator at issue;

f.    Failure to provide proper inspections of the elevator at issue;

g.    Failure to provide proper repairs to the elevator at issue;

h.    Failure to take the elevator at issue out of service, while the elevator was in

an unreasonably safe condition; and

i.    Other acts or omissions that will be shown at the trial of this cause.

68. The negligent and tortious actions/inactions of the employees, agents,

representatives, officers, managers, supervisors, superintendents, and servants of the Defendants,

as well as those actions which breached the above-mentioned contracts, set forth hereinabove

combined and concurred to proximately cause the injuries suffered by Plaintiff.

69. As a proximate result of the actions/inactions of the Defendants' employees, agents,

representatives, officers, managers, supervisors, superintendents, and servants, Plaintiff has

suffered, and will continue to suffer, substantial injuries and damages.

## COUNT IV:

## BREACH OF CONTRACT

### (As to Defendants Elevated Technologies, Diversified, and John Does A-Z)

70. Plaintiff reaffirms and realleges each of the allegations in the above paragraphs in

the Complaint.

71. A valid and binding contract existed between the VA and Elevated Technologies which is attached as Exhibit "A." In addition, a valid and binding agreement existed between Elevated Technologies and Diversified which is attached as Exhibit "B."

72. The contract and the agreement both concerned the inspection, maintenance, and repairs of elevators at the Medical Center.

73. Plaintiff, as an invitee and patient at the Medical Center, was an actual and intended third party beneficiary to both the contract and agreement concerning the inspection, maintenance, and repairs of elevators at the Medical Center.

74. Defendants breached the contract and agreement by failing to timely, properly, and sufficiently inspect, maintain, and repair the elevator at issue.

75. The contractual breaches by Defendants caused the elevator at issue to fail and/or malfunction and caused the injuries to Plaintiff herein.

76. As a proximate result of the Defendants' negligence, the Plaintiff has suffered, and will continue to suffer, substantial injuries and damages.

## COUNT V:

## STRICT LIABILITY - MISSISSIPPI PRODUCT LIABILITY ACT

**(As to Defendants Nidec, Nidec Motor Corporation, Motion Control Engineering, Inc., Nidec Motion Control, and John Does A-Z)**

77. Plaintiff reaffirms and realleges each of the allegations in the above paragraphs in the Complaint.

78. At all relevant times, Defendants were actively engaged in the business of designing, developing, engineering, manufacturing, assembling, testing, warranting, distributing, marketing, advertising, servicing, promoting and/or selling the subject elevator.

15

79. The Defendants had a duty to design, develop, engineer, manufacture, assemble, test, warrant, distribute, market, advertise, service, promote and/or sell the subject elevator so that it was neither defective nor unreasonably dangerous for its intended use.

80. The Defendants designed, developed, engineered, manufactured, assembled, tested, warranted, distributed, marketed, advertised, serviced, promoted and/or sold and placed on the market and into the stream of commerce the subject elevator and components in a defective condition rendering it unreasonably dangerous knowing that the elevator and its components would reach users and consumers without substantial change in the condition in which it was sold and that, at the time the subject elevator and components left the Defendants' control, it was unreasonably dangerous, defective, and unsafe for its intended use.

81. The Defendants placed the subject elevator and components on the market and into the stream of commerce. At the time the subject elevator and components left the control of the Defendants, the Defendants knew, or in light of reasonably available knowledge or in the exercise of reasonable care, should have known about the dangers that caused the injuries to Plaintiff.

82. The subject elevator and component parts were not materially or substantially altered, changed, modified, and/or damaged prior to the incident in question.

83. On May 7, 2019, Plaintiff was using the subject elevator and components for the purpose for which it was intended and was involved in an incident which was likewise reasonably foreseeable.

84. The subject elevator and components were defective and unreasonably dangerous.

85. The Defendants rendered the subject elevator and components unreasonably dangerous by failing to adequately warn users and/or consumers about the hazards of using the

elevator and components with a defective and/or inadequately designed and unreasonably

dangerous condition.

86. The subject elevator and components failed to function as expected and there

existed feasible design alternatives that would have to a reasonable probability prevented the

injuries to Plaintiff.

87. The defective conditions set forth herein rendered the subject elevator and

components unreasonably dangerous to the Plaintiff and others similarly situated.

88. As a direct and proximate result of the conduct, acts, and/or omissions of

Defendants, Plaintiff suffered injuries and damages. Additional and substantial damages and

injuries have been suffered for which recovery is provided pursuant to the Mississippi Product

Liability Act, Miss. Code Ann. § 11-1-63, and/or Mississippi law.

89. As a direct and proximate result of the conduct, acts, and/or omissions of the

Defendants, Plaintiff suffered damages for which recovery is provided pursuant to the

Mississippi Product Liability Act, Miss. Code Ann. § 11-1-63, and/or Mississippi law.

90. The Defendants' conduct, acts, and/or omissions as set forth above demonstrate

actual malice or gross negligence that evinces willful, wanton, or reckless disregard for the safety

of others and thus warrants the imposition of punitive damages, as contemplated by Miss. Code

Ann. § 11-1-65 and/or Mississippi law.

## **COUNT VI:**

## **FAILURE TO WARN - MISSISSIPPI PRODUCT LIABILITY ACT**

**(As to Defendants Nidec, Nidec Motor Corporation, Motion Control**

**Engineering, Inc., Nidec Motion Control, and John Does A-Z)**

91. Plaintiff reaffirms and realleges each of the allegations in the above paragraphs in

the Complaint.

92. As more fully described above, Defendants designed and/or manufactured a defective and unreasonably dangerous elevator and components.

93. The subject elevator and components were further rendered unreasonably dangerous because the Defendants failed to provide potential users of the elevator with an adequate warning of the hazards associated with operating and/or using the subject elevator in the defective and unreasonably dangerous conditions set for the above at the time the subject elevator left the Defendants' control.

94. At the time the subject elevator and components left the control of the Defendants, it possessed characteristics which the Defendants knew, or in light of reasonably available knowledge should have known, could cause or probably would cause severe injury to users of the elevator such as Plaintiff.

95. The Defendants failed to provide an adequate warning or instruction that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the subject elevator and components taking into account the characteristic of, and the ordinary knowledge common to an ordinary consumer who uses the product, such as Plaintiff.

96. As a direct and proximate result of the conduct, acts, and/or omissions of Defendants, Plaintiff suffered injuries and damages. Additional and substantial damages and injuries have been suffered for which recovery is provided pursuant to the Mississippi Product Liability Act, Miss. Code Ann. § 11-1-63, and/or Mississippi law.

97. As a direct and proximate result of the conduct, acts, and/or omissions of the Defendants, Plaintiff suffered damages for which recovery is provided pursuant to the

Mississippi Product Liability Act, Miss. Code Ann. § 11-1-63, and/or Mississippi law.

98. The Defendants' conduct, acts, and/or omissions as set forth above demonstrate actual malice or gross negligence that evinces willful, wanton, or reckless disregard for the safety of others and thus warrants the imposition of punitive damages, as contemplated by Miss. Code Ann. § 11-1-65 and/or Mississippi law.

## COUNT VII:

## NEGLIGENCE - MISSISSIPPI PRODUCT LIABILITY ACT

**(As to Defendants Nidec, Nidec Motor Corporation, Motion Control Engineering, Inc., Nidec Motion Control, and John Does A-Z)**

99. Plaintiff reaffirms and realleges each of the allegations in the above paragraphs in the Complaint.

100. At all times relevant to the Complaint, the Defendants owed to the general public, including Plaintiff, a duty to design, manufacture, and/or market only such elevators as were not defective and unreasonably dangerous to use.

101. The Defendants breached their duty to Plaintiff by manufacturing and marketing the subject elevator and components in a defective and unreasonably dangerous condition in that the elevator and components failed, causing Plaintiff's injuries. Additionally, the elevator and components lacked available safety features and alternative designs.

102. The subject elevator and components were dangerously defective and unsafe for normal and foreseeable use by and in the presence of the public because of its unsafe design, defective manufacturer, and/or failure of the elevator and components.

103. The Defendants failed to exercise reasonable care in the manufacturer and design of the subject elevator and components.

104.     The Defendants knowingly failed to adequately inspect and/or test the elevator and components before and during the design, production and sale of the elevator and component and/or knowingly placed the defective and unreasonably dangerous elevator and components into the stream of commerce.

105.     The Defendants negligently, recklessly, and/or knowingly sold the elevator without technologically available safety features despite being fully aware of the important safety benefits provided by such systems.

106.     The Defendants negligently, recklessly, and/or knowingly failed to warn of the potential dangers posed to consumers and the public by the use of the subject elevator and components.

107.     As a direct and proximate result of the conduct, acts, and omissions of the Defendants and other acts of negligence, defects, and unreasonably dangerous characteristics of the subject elevator and components, Plaintiff suffered injuries and damages as set forth herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks and demands judgment against the Defendants, and each of them, for damages, including the following:

    A.  All past and future economic damages;

    B.  All past and future non-economic damages;

    C.  Punitive damages;

    D.  Pre- and post-judgment interest to the extent allowed by law;

    E.  Costs to the extent allowed by law; and

    F.  All other relief to which Plaintiff may be entitled.

RESPECTFULLY SUBMITTED this the ___ day of April 2022.

**CHARLES KIMLER, PLAINTIFF**

By: _____

Matthew G. Mestayer (MSB NO. 9646)

Matthew G. Mestayer (MSB No. 9646)
Jennifer P. Burkes (MSB No. 9420)
REEVES & MESTAYER
160 Main Street
Biloxi, MS 39530
Phone: 228.374.5151
Fax: 228.374.6630
mgm@rmlawcall.com
jpb@rmlawcall.com

**COVER SHEET**
**Civil Case Filing Form**
*(To be completed by Attorney/Party*
*Prior to Filing of Pleading)*

| Court Identification Docket Number | Case Year | Docket Number |
|---|---|---|
| 2 4 0 C I | 2 0 2 2 | 6 7 RPM |
| County #   Judicial   Court ID | | Local Docket ID |
| District (CH, CI, CO) | | |

| 0 4 2 2 2 2 |
|---|
| Month   Date   Year |

This area to be completed by clerk

Mississippi Supreme Court
Administrative Office of Courts

Form AOC/01
(Revised 1/1/2001)

Case Number if filed prior to 1/1/94

IN THE ___CIRCUIT___ COURT OF ___HARRISON___ COUNTY

Short Style of Case: __Charles Kimler v Diversified Elevator Service and Equipment Company, et al__
Party Filing Initial Pleading: Type/Print Name __MATTHEW MESTAYER__   MS Bar No. __9646__
___Check (✓) if Not an Attorney   ___Check (✓) if *Pro Hac Vice*   Signature _____
Compensatory Damages Sought: $ _____   Punitive Damages Sought: $ _____
***Is Child Support contemplated as an issue in this suit?*** ___Yes  __✓__No   If "yes" is checked, please submit a completed Child Support
Information Sheet with Final Decree/Judgment

PLAINTIFF - PARTY(IES) INITIALLY BRINGING SUIT SHOULD BE ENTERED FIRST (FIRST NAME IN SHORT STYLE) - ENTER ADDITIONAL PLAINTIFFS ON SEPARATE FORM

Individual __Kimler_____   __Charles_____   ( _____ )   _____   _____
   Last Name   First Name   Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV
   Address of Plaintiff
___Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
   Estate of _____
___Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
   D/B/A / Agency _____
Business _____
   Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated
___Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below:
   D/B/A: __217 Lantana Blvd., Long Beach, MS  39560__

DEFENDANT - NAME OF DEFENDANT (FIRST NAME IN SHORT STYLE) - ENTER ADDITIONAL DEFENDANTS ON SEPARATE FORM

Individual _____   _____   ( _____ )   _____   _____
   Last Name   First Name   Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV
___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
   Estate of _____
___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
   D/B/A / Agency _____
Business __Diversified Elevator Service and Equipment Company, Inc.__
   Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated
___Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:
   D/B/A: __108 Distribution Drive, Suite B, Richland, MS 39218__
ATTORNEY FOR THIS DEFENDANT: _____   Bar No. ___ or  Name: _____   *Pro Hac Vice* (✓) ___
   (If known)

*In left hand column, check one (1) box that best describes the nature of this suit. In right hand column check all boxes which indicate secondary claims.*

**Business/Commercial**
- Accounting (Business)
- Bankruptcy
- Business Dissolution - Corporation
- Business Dissolution - Partnership
- Debt Collection
- Employment
- Examination of Debtor
- Execution
- Foreign Judgment
- Garnishment
- Pension
- Receivership
- Replevin
- Stockholder Suit
- Other _____

**Domestic Relations**
- Child Custody/Visitation
- Child Support
- Contempt
- Divorce: Fault
- Divorce: Irreconcilable Differences
- Domestic Abuse
- Emancipation
- Modification
- Paternity
- Property Division
- Separate Maintenance
- Termination of Parental Rights
- UIFSA (formerly URESA)
- Other _____

**Contract**
- Breach of Contract
- Installment Contract
- Insurance
- Product Liability under Contract
- Specific Performance
- Other _____

**Probate**
- Accounting (Probate)
- Birth Certificate Correction
- Commitment
- Conservatorship
- Guardianship
- Heirship
- Intestate Estate
- Minor's Settlement
- Muniment of Title
- Name Change
- Power of Attorney
- Testate Estate
- Will Contest
- Other _____

**Statutes/Rules**
- Bond Validation
- Civil Forfeiture
- Declaratory Judgment
- ERISA
- Eminent Domain
- Extraordinary Writ
- Federal Statutes
- Injunction or Restraining Order
- Municipal Annexation
- Racketeering (RICO)
- Railroad
- Seaman
- Other _____

**Appeals**
- Administrative Agency
- County Court
- Hardship Petition (Driver License)
- Justice Court
- MS Employmt Security Comm'n
- Municipal Court
- Oil & Gas Board
- Workers' Compensation
- Other _____

**Children and Minors - Non-Domestic**
- Adoption - Noncontested
- Consent to Abortion for Minor
- Removal of Minority
- Other _____

**Torts-Personal Injury**
- Bad Faith
- Fraud
- Loss of Consortium
- Malpractice - Legal
- Malpractice - Medical
- ✓ Negligence - General
- Negligence - Motor Vehicle
- Products Liability
- Wrongful Death
- Other _____

**Mass Tort**
- Asbestos
- Chemical Spill
- Dioxin
- Hand/Arm Vibration
- Hearing Loss
- Radioactive Materials
- Other _____

**Real Property**
- Adverse Possession
- Ejectment
- Eminent Domain
- Judicial Foreclosure
- Lien Assertion
- Partition
- Receiver Appointment
- Tax Sale: Confirmation/Cancellation
- Title, Boundary &/or Easement
- Other _____

**Civil Rights**
- Elections
- Habeas Corpus
- Post Conviction Relief
- Prisoner
- Other _____

IN THE  CIRCUIT          COURT OF  HARRISON            COUNTY, MISSISSIPPI

FIRST            JUDICIAL DISTRICT, CITY OF  GULFPORT

Docket No._____ - _____  _____     Docket No. If Filed
   File Yr        Chronological No.    Clerk's Local ID     Prior to 1/1/94_____

**PLAINTIFFS IN REFERENCED CAUSE - Page 1 of ___ Plaintiffs Pages**
**IN ADDITION TO PLAINTIFF SHOWN ON CIVIL CASE FILING FORM COVER SHEET**

**Plaintiff #2:**

Individual: _____ _____ ( _____ )  T
              Last Name        First Name    Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

   Estate of _____

___Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

   D/B/A _____

**Business** _____
              Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the name above, and enter below:

   D/B/A  11676 Katie Drive, Pass Christian, MS  39571_____

ATTORNEY FOR THIS PLAINTIFF: _____ Bar # or Name: _____     Pro Hac Vice (✓)___ Not an Attorney(✓)___

**Plaintiff #3:**

Individual: _____ _____ ( _____ )
              Last Name        First Name    Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

   Estate of _____

___Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

   D/B/A _____

**Business** _____
              Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the name above, and enter below:

   D/B/A _____

ATTORNEY FOR THIS PLAINTIFF: _____ Bar # or Name: _____     Pro Hac Vice (✓)___ Not an Attorney(✓)___

**Plaintiff #4:**

Individual: _____ _____ ( _____ )
              Last Name        First Name    Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

   Estate of _____

___Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

   D/B/A _____

**Business** _____
              Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the name above, and enter below:

   D/B/A _____

ATTORNEY FOR THIS PLAINTIFF: _____ Bar # or Name: _____     Pro Hac Vice (✓)___ Not an Attorney(✓)___

IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT, CITY OF GULFPORT

Docket No._____ - _____ _____
File Yr        Chronological No.     Clerk's Local ID

Docket No. If Filed
Prior to 1/1/94 _____

**DEFENDANTS IN REFERENCED CAUSE - Page 1 of 2 Defendants Pages**
**IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET**

## Defendant #2:

Individual: _____ ~ _____ ( _____ ) _____ _____
Last Name        First Name        Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

Business Elevated Technologies, Inc. _____
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A 302 Enterprise Drive, Suite A, Oxford, MS 38655

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____   Pro Hac Vice (✓)___ Not an Attorney(✓)___

## Defendant #3:

Individual: _____ _____ ( _____ ) _____ _____
Last Name        First Name        Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

Business Elevator Service, Inc. _____
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A 302 Enterprise Drive, Suite A, Oxford, MS 38655

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____   Pro Hac Vice (✓)___ Not an Attorney(✓)___

## Defendant #4:

Individual: Hernandez _____ Bryan _____ ( _____ ) _____ _____
Last Name        First Name        Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

Business _____
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:

D/B/A Address Unknown

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____   Pro Hac Vice (✓)___ Not an Attorney(✓)___

IN THE <u>CIRCUIT</u>         COURT OF <u>HARRISON</u>         COUNTY, MISSISSIPPI

<u>FIRST</u>         JUDICIAL DISTRICT, CITY OF <u>GULFPORT</u>

Docket No._____ - _____ _____
File Yr          Chronological No.          Clerk's Local ID

Docket No. If Filed
Prior to 1/1/94_____

**DEFENDANTS IN REFERENCED CAUSE - Page ___ of _2_ Defendants Pages
IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET**

**Defendant # ___ :**

Individual: _____ _____ ( _____ ) _____ _____
                    Last Name                    First Name          Maiden Name, if Applicable     Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

   Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

   D/B/A _____

**Business** <u>Nidec</u>_____
          Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

   D/B/A <u>645 Lakeland East Drive, Suite 101, Flowood, MS 39232</u>

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Defendant # ___ :**

Individual: _____ _____ ( _____ ) _____ _____
                    Last Name                    First Name          Maiden Name, if Applicable     Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

   Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

   D/B/A _____

**Business** <u>Nidec Motor Corporation</u>_____
          Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

   D/B/A <u>645 Lakeland East Drive, Suite 101, Flowood, MS 39232</u>

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Defendant # ___ :**

Individual: _____ _____ ( _____ ) _____ _____
                    Last Name                    First Name          Maiden Name, if Applicable     Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

   Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

   D/B/A _____

**Business** <u>Motion Control Engineering, Inc.</u>_____
          Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

   D/B/A <u>330 N. Brand Blvd., Suite 700, Glendale, CA 91203</u>

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

Defendant #___

Nidec motion Control
330 N. Brand Blvd., Suite 700

| SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30 | | | 1. REQUISITION NO. 520-18-3-543-0046 | | PAGE 1 OF 29 |
|---|---|---|---|---|---|
| 3. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE 04/01/2018 | 4. ORDER NO. 36C25618Z0632 | 5. SOLICITATION NUMBER | | 6. SOLICITATION ISSUE DATE |
| 7. FOR SOLICITATION INFORMATION CALL: | a. NAME Danette Impey | | b. TELEPHONE NO. (No Collect Calls) 228-523-4747 | | 8. OFFER DUE DATE/LOCAL TIME |

9. ISSUED BY                                   CODE

Department of Veterans Affairs
Gulf Coast Veterans Health Care System
Network Contracting Office 16
400 Veterans Avenue
Biloxi MS 39531

10. THIS ACQUISITION IS:   ☐ UNRESTRICTED OR   ☐ SET ASIDE:   100 % FOR:
☐ SMALL BUSINESS   ☐ WOMEN-OWNED SMALL BUSINESS (WOSB) ELIGIBLE UNDER THE WOMEN-OWNED SMALL BUSINESS PROGRAM
☐ HUBZONE SMALL BUSINESS   ☐ EDWOSB
☐ SERVICE-DISABLED VETERAN-OWNED SMALL BUSINESS   ☐ 8(A)

NAICS: 238290
SIZE STANDARD: $15.0 Million

| 11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED ☒ SEE SCHEDULE | 12. DISCOUNT TERMS | 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | 13b. RATING N/A |
|---|---|---|---|
| | | | 14. METHOD OF SOLICITATION ☒ RFQ   ☐ IFB   ☐ RFP |

15. DELIVER TO                                   CODE

Department of Veterans Affairs
Gulf Coast Veterans Health Care System
Network Contracting Office 16
400 Veterans Avenue
Biloxi MS 39531

16. ADMINISTERED BY                             CODE

Department of Veterans Affairs
Gulf Coast Veterans Health Care System
Network Contracting Office 16
400 Veterans Avenue
Biloxi MS 39531

| 17a. CONTRACTOR/OFFEROR   CODE  4N6B5   FACILITY CODE | 18a. PAYMENT WILL BE MADE BY                CODE |
|---|---|
| ELEVATOR SERVICE, INC. | ***ELECTRONIC INVOICING APPLIES*** Department of Veterans Affairs Financial Services Center P.O. Box 149971 Austin TX 78714-8972 |
| 817 OTTAWA AVE NW GRAND RAPIDS MI 49503 | |
| TELEPHONE NO.          DUNS: 182955046+4 | PHONE:          FAX: |
| 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER | 18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED  ☐ SEE ADDENDUM |

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES   See CONTINUATION Page | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | Contractor shall provide full maintenance services, which includes regular and systematic inspections, of all elevators and dumbwaiters, and any other services necessary to accomplish elevator maintenance and inspections for the Gulf Coast Veterans Health Care System, Biloxi, MS in accordance with the terms and conditions of the contract, as needed. (See Statement of Work for additional detailed information.) Base period PO / obligation number is 520C80196. Please use this PO / obligation number on all invoices submitted for the period of 04/01/2018 through 05/30/2018. A new purchase order will be issued when the option period is exercised. | | | | |

(Use Reverse and/or Attach Additional Sheets as Necessary)

| 25. ACCOUNTING AND APPROPRIATION DATA   See CONTINUATION Page 520-3680162-543-854100-2580 010050190 Funded by PO #520C80196 | 26. TOTAL AWARD AMOUNT (For Govt. Use Only) $167,800.00 |
|---|---|

| 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA | ☐ ARE | ☐ ARE NOT ATTACHED. |
|---|---|---|
| 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA | ☐ ARE | ☐ ARE NOT ATTACHED. |

| 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN   1 COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED | 29. AWARD OF CONTRACT: REF._____ OFFER DATED_____ YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN IS ACCEPTED AS TO ITEMS: |
|---|---|
| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER) Danette R. Impey   Digitally signed by Danette R. Impey 224540 |
| 30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT) N.D. MCFADDEN   PRESIDENT | 30c. DATE SIGNED 3-27-18 | 31b. NAME OF CONTRACTING OFFICER (TYPE OR PRINT) Danette Rene' Impey Contract Officer 16-0500 | 31c. DATE SIGNED 03/28/2018 |

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1449 (REV. 2/2012)
Prescribed by GSA-FAR (48 CFR) 53.212

A

36C25618P0632

## Table of Contents

SECTION A...............................................................................................................1

    A.1  SF 1449  SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS.............1

SECTION B – CONTINUATION OF SF 1449 BLOCKS.............................................3

    B.1  CONTRACT ADMINISTRATION DATA......................................................3

    B.2  LIMITATIONS ON SUBCONTRACTING-- MONITORING AND COMPLIANCE (JUN 2011)......................................................................................................4

    B.3  SCOPE OF WORK..............................................................................5

    B.4  PRICE/COST SCHEDULE.....................................................................9

        ACCOUNTING AND APPROPRIATION DATA.........................................13

    B.4  DELIVERY SCHEDULE.......................................................................14

SECTION C – CONTRACT CLAUSES......................................................................17

    C.1  52.212-5  CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS—COMMERCIAL ITEMS (JAN 2018)..............17

    C.2  52.217-8 OPTION TO EXTEND SERVICES (NOV 1999)..............................23

    C.3  52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000).....24

    C.4  52.228-5 INSURANCE—WORK ON A GOVERNMENT INSTALLATION (JAN 1997).24

    C.5  SUPPLEMENTAL INSURANCE REQUIREMENTS.........................................24

    C.6  52.232-19  AVAILABILITY OF FUNDS FOR THE NEXT FISCAL YEAR  (APR 1984) 25

    C.7  VAAR 852.203-70 COMMERCIAL ADVERTISING (JAN 2008).........................25

    C.8  VAAR 852.203-71  DISPLAY OF DEPARTMENT OF VETERAN AFFAIRS HOTLINE POSTER (DEC 1992)...................................................................................25

    C.9  VAAR 852.215-70  SERVICE-DISABLED VETERAN-OWNED AND VETERAN-OWNED SMALL BUSINESS EVALUATION FACTORS (JUL 2016)(DEVIATION)...........26

    C.10  VAAR 852.215-71  EVALUATION FACTOR COMMITMENTS (DEC 2009).........26

    C.11  VAAR 852.219-10  VA NOTICE OF TOTAL SERVICE-DISABLED VETERAN-OWNED SMALL BUSINESS SET-ASIDE (JUL 2016)(DEVIATION)..............................26

    C.12  VAAR 852.232-72 ELECTRONIC SUBMISSION OF PAYMENT REQUESTS (NOV 2012)......................................................................................................27

    C.13  VAAR 852.237-70 CONTRACTOR RESPONSIBILITIES (APR 1984)..................28

    C.14  52.252-2  CLAUSES INCORPORATED BY REFERENCE  (FEB 1998)...............29

36C25618P0632

# SECTION B – CONTINUATION OF SF 1449 BLOCKS

## B.1  CONTRACT ADMINISTRATION DATA

(continuation from Standard Form 1449, block 18A.)

1.  Contract Administration:  All contract administration matters will be handled by the following individuals:

a. CONTRACTOR:        Elevator Service Inc.

Nate McFadden

616-235-4332

nate.mcfadden@esigr.com

b. GOVERNMENT:  Contracting Officer 36C256 Danette Impey

Department of Veterans Affairs

Gulf Coast Veterans Health Care System

Network Contracting Office 16

400 Veterans Avenue

Biloxi MS 39531

2.  CONTRACTOR REMITTANCE ADDRESS:  All payments by the Government to the contractor will be made in accordance with:

[X]              52.232-33, Payment by Electronic Funds Transfer—System For Award Management, or
[]               52.232-36, Payment by Third Party
3.  INVOICES:  Invoices shall be submitted in arrears:

a.  Quarterly                    []

b.  Semi-Annually                []

c.  Other                        [X]  monthly in arrears

4.  GOVERNMENT INVOICE ADDRESS:  All Invoices from the contractor shall be submitted electronically in accordance with VAAR Clause 852.232-72 Electronic Submission of Payment Requests.

***ELECTRONIC INVOICING APPLIES***

Department of Veterans Affairs

Financial Services Center

P.O. Box 149971

Austin TX 78714 8972

Elevated_0000105

36C25618P0632

ACKNOWLEDGMENT OF AMENDMENTS:  The offeror acknowledges receipt of amendments to the Solicitation numbered and dated as follows:

| AMENDMENT NO | DATE |
|---|---|
|  |  |
|  |  |
|  |  |

## B.2  LIMITATIONS ON SUBCONTRACTING-- MONITORING AND COMPLIANCE (JUN 2011)

This solicitation includes VAAR 852.219-10 VA Notice of Total Service- Disabled Veteran-Owned Small Business Set-Aside. Accordingly, any contract resulting from this solicitation will include this clause. The contractor is advised in performing contract administration functions, the CO may use the services of a support contractor(s) retained by VA to assist in assessing the contractor's compliance with the limitations on subcontracting or percentage of work performance requirements specified in the clause. To that end, the support contractor(s) may require access to contractor's offices where the contractor's business records or other proprietary data are retained and to review such business records regarding the contractor's compliance with this requirement. All support contractors conducting this review on behalf of VA will be required to sign an "Information Protection and Non-Disclosure and Disclosure of Conflicts of Interest Agreement" to ensure the contractor's business records or other proprietary data reviewed or obtained in the course of assisting the CO in assessing the contractor for compliance are protected to ensure information or data is not improperly disclosed or other impropriety occurs. Furthermore, if VA determines any services the support contractor(s) will perform in assessing compliance are advisory and assistance services as defined in FAR 2.101, Definitions, the support contractor(s) must also enter into an agreement with the contractor to protect proprietary information as required by FAR 9.505-4, obtaining access to proprietary information, paragraph (b). The contractor is required to cooperate fully and make available any records as may be required to enable the CO to assess the contractor's compliance with the limitations on subcontracting or percentage of work performance requirement.

Elevated_0000106

36C25618P0632

## B.3 SCOPE OF WORK

### ELEVATOR MAINTENANCE
### GULF COAST VETERANS HEALTH CARE SYSTEM
### BILOXI, MS 39531

#### DESCRIPTION, SPECIFICATIONS, AND WORK STATEMENT

1. REQUIREMENTS:  This contract covers full maintenance which includes regular and systematic inspection of each of the elevators and dumbwaiters listed in the Schedule of Elevators and Dumbwaiters.  During the inspection visits, the Contractor shall clean, adjust and lubricate the equipment as specified below, determine the nature and extent of any trouble, and maintenance required to restore the elevators to safe and satisfactory service, and if conditions warrant, furnish and install parts listed below.  All equipment, materials and installations shall conform to the following codes:

    (a) The latest edition of the American National Standard Safety Code for Elevators, Dumbwaiters, Escalators and Moving Walks -- AMSE, A 17.1.

    (b) The latest edition of the American Standard Practice for Inspection of Elevators, Inspectors Manual, A 17.1.

2. QUALIFICATION OF BIDDERS:

    (a) The contractor shall be a firm regularly engaged in the repair, maintenance and servicing of vertical transportation systems, hereinafter referred to as elevators.  His/Her expertise, experience and regular business shall include the repair, maintenance and servicing of both traction type machines and hydraulic machines of the passenger, freight and hospital type elevators.  His/Her expertise and experience shall be of such extent so as to provide him/her the knowledge of conditions of elevators and the scope of repairs, maintenance and servicing of elevators generally found in hospital use.  He/She shall possess all the manpower, equipment, tools and ready sources of parts as necessary to promptly, skillfully and expertly carry out the conditions of the contract.

    (b) Upon request of the Government, bidder shall be able to show evidence of his reliability, ability and experience by furnishing (1) a list of personnel who will perform under the contract showing the length and type of experience of such personnel and proof of certification by the International Union of Elevator Constructors, and (2) the names and addresses of other concerns and/or Government Agencies for which comparable services were rendered by the Bidder.  Generally, the principals of the company shall have had approximately five years successful experience in fully maintaining elevators and dumbwaiters.

    (c) Ability to meet the foregoing experience requirements and the adequacy of the information submitted will be considered by the Contracting Officer in determining the responsibility of the Bidder.

3. QUALIFICATION OF PERSONNEL PERFORMING WORK: All work shall be performed by mechanics and helpers certified by the International Union of Elevator Constructors.  Proof of personnel certification shall be furnished to the Contracting Officer by the successful bidder prior to award of contract.

Elevated_0000107

4. **INSPECTION OF PREMISES AND PRE-BID CONFERENCE:** Bidders are requested to attend a site visit/pre-bid conference that will be scheduled at a later date. The conference will be held in the conference room at Bldg. 10, Veterans Administration, Biloxi, MS. The purpose of the conference is to allow prospective bidders to inspect the elevators prior to submitting bids and to be fully informed of the character and site conditions under which the service is to be performed. Failure to do so will not relieve the successful bidder from performing in accordance with the strict intent and meaning of the contract as specified in this proposal without additional cost to the Government.

5. **INSPECTIONS:**

   (a) All passenger and service type elevators shall be inspected weekly; a minimum of one hour per elevator per inspection is required. Inspection shall be made each week. If a holiday falls on the scheduled day of inspection, the required inspection will be performed on the following workday. Records of inspection shall be submitted to the COTR on the date performed.

   (b) All freight type elevators and dumbwaiters shall be inspected semi-monthly, a minimum of one and one-half hours per elevator and three quarters of an hour per dumbwaiter per inspection is required. Records of inspections shall be submitted to the COTR on the date performed.

6. **CLEANING, LUBRICATION AND ADJUSTMENT SERVICES:** Cleaning, lubrication and adjustment services shall be accomplished in accordance with (or exceed) Preventive Maintenance Check List (Attachment #1); and/or when in excess of VA Standards and not contrary to them, as specified by the equipment manufacturer; and/or as required by the state of repair of a particular equipment component or end item. The work shall include, but not be limited to, the following: main machine, brakes, motors, generators, controllers, relay panels, selectors, operating devices, interlocks and contacts, guide shoes, roller guides in hoistway and car door sills, hangers for all doors and car doors, signal system, car safety devices, governors, tension frames, and sheaves. In addition, the requirements of paragraphs 7, 8 and 9 below shall also apply. Cleaning and refinishing of the interior of cars and frames of hoistway doors and frames are excluded. The Contractor shall notify the Engineering Officer or his designee of any extended downtime (over two hours) due to delay in obtaining service, replacement parts, or other repair functions. Successful bidder may submit to Contracting Officer for approval an alternate inspection, cleaning, lubrication and adjustment checklist using Preventive Maintenance CheckList (Attachment E) as a guide. The contractor shall document on repair tickets/inspection tickets the nature of the work performed and the parts used.

7. **CLEANING SERVICE:** Guide rails, overhead sheaves and beams, counterweight frames, top of cars, bottom of platforms, pits, and machine room floors shall be brushed, broomed, and mopped clean as specified. All accumulated rubbish shall be removed and deposited in the station provided trash compactor or dumpster. Chemicals, oily rags or other fire hazardous material shall be properly protected in Contractor-furnished VA-approved containers or removed from the station daily after the completion of the cleaning activity.

8. **LUBRICATION:** All sheave bearings and hoisting ropes shall be lubricated; machine stuffing boxes and bearings on motor operated brakes shall be repacked, and gear cases and guide lubricators shall be refilled when required. Hydraulic fluid sufficient to maintain required operating levels shall be furnished on all hydraulic elevators.

9. **ADJUSTMENT SERVICES:** All hoisting ropes shall be examined and the tension equalized and, whenever necessary to insure maintenance of adequate safety factors, all hoisting ropes and governor ropes shall be renewed. If replacement ropes are necessary, the contractor shall submit a proposal to the contracting officer for replacement. This proposal shall include a cost breakdown which will show the cost of the ropes and the cost of labor to install. The contractor will not commence with replacement until specifically authorized by the contracting officer. The exterior of the machinery and any other parts of the equipment, subject to rust, shall be kept properly pained and presentable at all times. The motor windings shall be kept free of rust where roller guides are used and properly

lubricated where sliding guides are used. Guide shoe rollers and gibs shall be renewed as required to insure smooth and satisfactory operation. All electrical wiring and conductors extending to elevators and dumbwaiters from circuit breakers or main line switches in machine rooms and from outlets in the hoistways shall be repaired and/or replaced when required. Circuit breakers or main line switches, together with fuses for same, are excluded.

10. HOURS OF WORK: Work required in the performance of this contract shall be conducted during the hours as outlined below:

   (a) Maintenance not requiring elector operational "shut-down" will be performed during the hospital's regular administrative working hours, (8:00 AM to 4:30 PM) except the Contractor shall provide emergency call-back service at any hour of any day of the week as specified under Para.13 of this section.

   (b) Maintenance requiring elevator operational "shut-down" will be performed during non-administrative working hours unless otherwise authorized in writing by the Contracting Officer.

   (c) Prior to commencement and after completion of any work, including INSPECTIONS as required in paragraph 2 above, during both normal and after duty hours, the contractor shall report to a specific office to be designated by the Contracting Officer.

11. MATERIALS TO BE FURNISHED: The Contractor shall furnish all lubricants, cleaning supplies, tools, and equipment necessary to perform the work described above. All lubricants shall be as recommended by manufacturer of the equipment or VA-approved equal thereto.

12. PARTS TO BE FURNISHED AN INSTALLED OR REPAIRED: In accordance with standard elevator industry practice, this is a full maintenance contract. The contractor will accept these elevators "as is". Except as listed below, no components are excluded from the requirements of this contract.

   (a) The Contractor shall furnish and install or repair when and as necessary, machine hydraulic pumps, motor generators, controllers, selectors, worms, gears, thrusts, windings, commutators, hydraulic pump "VEE" belts and pulleys, hydraulic valve components and coils, circuits, magnet frames, relays, contactors, control fuses, cams, car door and hoistway door hangers, tracks and governors, push buttons, annunciators, hail lanterns and indicators, lamp replacements in signal systems and all other elevator signal and accessory equipment complete. All parts shall be of the original manufacturer's design and specification or equal thereto.

   (b) The Contractor shall not supply incandescent or fluorescent lamps for car light fixtures and shaft lights, floor covering on elevator car platform, make renewals or repairs necessitated by reason of negligence or misuse of the equipment by persons other than the Contractor, his representatives and employees or by reason of any other cause beyond control of the Contractor, except normal wear and tear, any new attachments as may be recommended or directed by inspection firms or by Federal, State, Municipal or other Government authorities. Incandescent and fluorescent lamps excluded above will be furnished to contractor by the Government and Contractor will be responsible for installation.

   (c) This clause shall cover only those parts not included in paragraph 12a above which may cost less than $1,000.00. The contractor will be required to replace any part which cost less than the above amount at no additional charge to the Government. The monthly maintenance charge is understood to include the cost of such parts. If it is necessary to replace any part which cost more than the above listed amount the contractor shall immediately notify the Contracting Officer and provide a cost proposal for the part. The cost proposal shall be for the cost of the part only. The cost of the labor to install the part is understood to be included in the monthly maintenance

charge. The Contracting Officer will either provide the contractor with the part or authorize the contractor to install the part and include the cost of the part on his/her monthly invoice. If contractor furnishes part, a quote from his/her supplier must be furnished with invoice for verification of cost.

13. EMERGENCY CALL BACK SERVICE: Emergency call back service, within two hours or less, (one hour or less if in patient care or patient quarters building and one elevator is already out of service in that particular building), will be provided in response to requests by telephone or otherwise from the (1) Contracting Officer, (2) Chief, Engineering Service, or (3) their designees in case of a malfunction or if emergency trouble should develop between regularly scheduled maintenance. This call back service shall be rendered at any hour of any day of the week as requested at no extra charge to the Government. There shall be no more than 9 call-backs per month when averaged over a 6-month period. Failure to maintain an acceptable rate of call-backs will be grounds to initiate termination for default.

14. REPORT OF SERVICES: Upon completion of the services, the contractor shall report to the Engineering Officer or designee, and a written report of services performed shall be furnished the Engineering Officer or designee. Such reports shall advise of any repairs or repair parts not required to be furnished under the contract that are necessary to maintain the equipment in perfect operating condition.

15. RECORDS: The contractor shall maintain a complete orderly and chronological file including drawings, complete parts list, and copies of all reports as required by these specifications. A record of all call backs and repairs shall be kept by the contractor indicating any difficulty experiences and the corrective measures taken to eliminate these difficulties.

16. CORRECTION OF DEFICIENCIES FOUND DURING ELEVATOR INSPECTIONS: The full maintenance contractor will be furnished a list of deficiencies that were found during the semi- or annual inspection performed by the inspection contractor. The full maintenance contractor will correct all deficiencies noted within 30days after receipt of the reports.

Elevated  0000110

36C25618P0632

## B.4 PRICE/COST SCHEDULE

### ITEM INFORMATION

| ITEM NUMBER | DESCRIPTION OF SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001 | Contractor shall provide full maintenance services, which includes regular and systematic inspections, of all elevators and dumbwaiters, and any other services necessary to accomplish elevator maintenance and inspections. (See attached Statement of Work for detailed information.)<br><br>Joint Ambulatory Care Center (JACC), Pensacola, FL Passenger Hydraulic (4 Elevators) Contract Period: Base POP Begin: 04-01-2018 POP End: 09-30-2018 | 6.00 | MO | $2,125.0000 | $12,750.00 |
| 0002 | Contractor shall provide full maintenance services, which includes regular and systematic inspections, of all elevators and dumbwaiters, and any other services necessary to accomplish elevator maintenance and inspections. (See attached Statement of Work for detailed information.)<br><br>Biloxi, MS - Building 56 pier. Contract Period: Base POP Begin: 04-01-2018 POP End: 09-30-2018 | 6.00 | MO | $475.0000 | $2,850.00 |

Elevated_0000111

36C25618P0632

| 0003 | Contractor shall provide full maintenance services, which includes regular and systematic inspections, of all elevators and dumbwaiters, and any other services necessary to accomplish elevator maintenance and inspections. (See attached Statement of Work for detailed information.)<br><br>Biloxi, MS – Building 3- dumbwaiters.<br>Contract Period: Base<br>POP Begin: 04-01-2018<br>POP End: 09-30-2018 | 6.00 | MO | $1,200.0000 | $7,200.00 |
| 0004 | Contractor shall provide full maintenance services, which includes regular and systematic inspections, of all elevators and dumbwaiters, and any other services necessary to accomplish elevator maintenance and inspections. (See attached Statement of Work for detailed information.)<br><br>Biloxi, MS - Passenger.<br>12 elevators<br>Contract Period: Base<br>POP Begin: 04-01-2018<br>POP End: 09-30-2018 | 6.00 | MO | $9,500.0000 | $57,000.00 |
| 0005 | Contractor shall provide full maintenance services, which includes regular and systematic inspections, of all elevators and dumbwaiters, and any other services necessary to accomplish elevator maintenance and inspections. (See attached | 6.00 | MO | $13,500.0000 | $81,000.00 |

Elevated_0000112

36C25618P0632

| | | | | | |
|------|---------|---|----|---|---|
| | Statement of Work for detailed information.) | | | | |
| | Biloxi, MS - Passenger-hydraulic, 21 elevators Contract Period: Base POP Begin: 04-01-2018 POP End: 09-30-2018 | | | | |
| 0006 | Assist with fire safety testing in August and September. Contract Period: Base POP Begin: 04-01-2018 POP End: 09-30-2018 | 1.00 | EA | $2,000.0000 | $2,000.00 |
| 1001 | Contractor shall provide full maintenance services, which includes regular and systematic inspections, of all elevators and dumbwaiters, and any other services necessary to accomplish elevator maintenance and inspections. (See attached Statement of Work for detailed information.) Joint Ambulatory Care Center, Pensacola, FL; Passenger Hydraulic (4 Elevators) Biloxi, MS; Building 56 pier. Biloxi, MS; Building 3-dumbwaiters. Biloxi, MS; Passenger, 12 elevators. Biloxi, MS; Passenger-hydraulic, 21 elevators. Assist with fire safety testing in August and September. Contract Period: Option 1 POP Begin: 10-01-2018 POP End: 09-30-2019 | 12.00 | MO | $27,738.0000 | $332,856.00 |
| 2001 | Contractor shall provide full maintenance services, which includes regular and systematic inspections, of all elevators and | 12.00 | MO | $28,709.0000 | $344,508.00 |

Elevated_0000113

36C25618P0632

| | | | | | | |
|---|---|---|---|---|---|---|
| | dumbwaiters, and any other services necessary to accomplish elevator maintenance and inspections. (See attached Statement of Work for detailed information.)<br><br>Joint Ambulatory Care Center, Pensacola, FL; Passenger Hydraulic (4 Elevators)<br>Biloxi, MS; Building 56 pier.<br>Biloxi, MS; Building 3- dumbwaiters.<br>Biloxi, MS; Passenger, 12 elevators.<br>Biloxi, MS; Passenger- hydraulic, 21 elevators. Assist with fire safety testing in August and September.<br>Contract Period: Option 2 POP Begin: 10-31-2019 POP End: 09-30-2020 | | | | | |
| 3001 | Contractor shall provide full maintenance services, which includes regular and systematic inspections, of all elevators and dumbwaiters, and any other services necessary to accomplish elevator maintenance and inspections. (See attached Statement of Work for detailed information.)<br><br>Joint Ambulatory Care Center, Pensacola, FL; Passenger Hydraulic (4 Elevators)<br>Biloxi, MS; Building 56 pier.<br>Biloxi, MS; Building 3- dumbwaiters.<br>Biloxi, MS; Passenger, 12 elevators.<br>Biloxi, MS; Passenger- | 12.00 | MO | $29,714.0000 | | $356,568.00 |

Elevated_0000114

36C25618P0632

| | | | | | |
|---|---|---|---|---|---|
| | hydraulic, 21 elevators. Assist with fire safety testing in August and September. Contract Period: Option 3 POP Begin: 10-31-2020 POP End: 09-30-2021 | | | | |
| 4001 | Contractor shall provide full maintenance services, which includes regular and systematic inspections, of all elevators and dumbwaiters, and any other services necessary to accomplish elevator maintenance and inspections. (See attached Statement of Work for detailed information.) Joint Ambulatory Care Center, Pensacola, FL; Passenger Hydraulic (4 Elevators) Biloxi, MS; Building 56 pier. Biloxi, MS; Building 3- dumbwaiters. Biloxi, MS; Passenger, 12 elevators. Biloxi, MS; Passenger- hydraulic, 21 elevators. Assist with fire safety testing in August and September. Contract Period: Option 4 POP Begin: 10-31-2021 POP End: 09-30-2022 | 12.00 | MO | $30,754.0000 | $369,048.00 |

**GRAND TOTAL**   **$1,565,780.00**

## ACCOUNTING AND APPROPRIATION DATA

| ACRN | APPROPRIATION | REQUISITION NUMBER | AMOUNT |
|---|---|---|---|
| 1 | 520-3680162-543-854100 Recurring MYT\R - Real Pr-2580 Non-Medical Contracts and-010050190 | 520-18-3-543-0046 (P) | $0.00 |

36C25618P0632

## B.5 DELIVERY SCHEDULE

| ITEM NUMBER | | | QUANTITY | DELIVERY DATE |
|---|---|---|---|---|
| 0001 | SHIP TO: | Dept. of Veterans Affairs<br>FMS-Engineering (138)<br>400 Veterans Avenue<br>Biloxi, MS 39531 2410<br>USA | 6.00 | |
| | MARK<br>FOR: | 228-523-4983<br>dean.hughes@va.gov | | |
| 0002 | SHIP TO: | Dept. of Veterans Affairs<br>FMS-Engineering (138)<br>400 Veterans Avenue<br>Biloxi, MS 39531 2410<br>USA | 6.00 | |
| | MARK<br>FOR: | 228-523-4983<br>dean.hughes@va.gov | | |
| 0003 | SHIP TO: | Dept. of Veterans Affairs<br>FMS-Engineering (138)<br>400 Veterans Avenue<br>Biloxi, MS 39531 2410<br>USA | 6.00 | |
| | MARK<br>FOR: | 228-523-4983<br>dean.hughes@va.gov | | |
| 0004 | SHIP TO: | Dept. of Veterans Affairs<br>FMS-Engineering (138)<br>400 Veterans Avenue<br>Biloxi, MS 39531 2410<br>USA | 6.00 | |
| | MARK<br>FOR: | 228-523-4983<br>dean.hughes@va.gov | | |
| 0005 | SHIP TO: | Dept. of Veterans Affairs<br>FMS-Engineering (138)<br>400 Veterans Avenue<br>Biloxi, MS 39531 2410<br>USA | 6.00 | |
| | MARK<br>FOR: | 228-523-4983<br>dean.hughes@va.gov | | |
| 0006 | SHIP TO: | Dept. of Veterans Affairs<br>FMS-Engineering (138)<br>400 Veterans Avenue<br>Biloxi, MS 39531 2410<br>USA | 1.00 | |

Elevated  0000116

36C25618P0632

| | MARK<br>FOR: | 228-523-4983<br>dean.hughes@va.gov | |
|---|---|---|---|
| **1001** | SHIP TO:<br><br><br><br>MARK<br>FOR: | Dept. of Veterans Affairs<br>FMS-Engineering (138)<br>400 Veterans Avenue<br>Biloxi, MS 39531 2410<br>USA<br>228-523-4983<br>dean.hughes@va.gov | 12.00 |
| **2001** | SHIP TO:<br><br><br><br>MARK<br>FOR: | Dept. of Veterans Affairs<br>FMS-Engineering (138)<br>400 Veterans Avenue<br>Biloxi, MS 39531 2410<br>USA<br>228-523-4983<br>dean.hughes@va.gov | 12.00 |
| **3001** | SHIP TO:<br><br><br><br>MARK<br>FOR: | Dept. of Veterans Affairs<br>FMS-Engineering (138)<br>400 Veterans Avenue<br>Biloxi, MS 39531 2410<br>USA<br>228-523-4983<br>dean.hughes@va.gov | 12.00 |
| **4001** | SHIP TO:<br><br><br><br>MARK<br>FOR: | Dept. of Veterans Affairs<br>FMS-Engineering (138)<br>400 Veterans Avenue<br>Biloxi, MS 39531 2410<br>USA<br>228-523-4983<br>dean.hughes@va.gov | 12.00 |

Elevated  0000117

36C25618P0632

For the purposes of the award of this Contract, the Government intends to evaluate the option to extend services under FAR 52.217-8 as follows:

The evaluation will consider the possibility that the option can be exercised at any time, and can be exercised in increments of one to six months, but not for more than a total of six months during the life of the contract. The evaluation will assume that the prices for any option exercised under FAR 52.217-8 will be at the same rates as those in effect under the contract at the time the option is exercised. The evaluation will therefore assume that the addition of the price or prices of any possible extension or extensions under FAR 52.217-8 to the total price of all proposals relative to each other, and will not affect the ranking of proposals based on price, unless, after reviewing the proposals, the Government determines that there is a basis for finding otherwise. This evaluation will not obligate the Government to exercise any option under FAR 52.217-8.

Elevated_0000118

## SECTION C - CONTRACT CLAUSES

## C.1  52.212-5  CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS—COMMERCIAL ITEMS (JAN 2018)

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.203-19, Prohibition on Requiring Certain Internal Confidentiality Agreements or Statements (JAN 2017) (section 743 of Division E, Title VII, of the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235) and its successor provisions in subsequent appropriations acts (and as extended in continuing resolutions)).

(2) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (NOV 2015).

(3) 52.233-3, Protest After Award (Aug 1996) (31 U.S.C. 3553).

(4) 52.233-4, Applicable Law for Breach of Contract Claim (Oct 2004) (Public Laws 108-77 and 108-78 (19 U.S.C. 3805 note)).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

[X] (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 4704 and 10 U.S.C. 2402).

[] (2) 52.203-13, Contractor Code of Business Ethics and Conduct (OCT 2015) (41 U.S.C. 3509).

[] (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (JUN 2010) (Section 1553 of Pub. L. 111-5). (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009.)

[X] (4) 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards (OCT 2016) (Pub. L. 109–282) (31 U.S.C. 6101 note).

[] (5) [Reserved]

[X] (6) 52.204-14, Service Contract Reporting Requirements (OCT 2016) (Pub. L. 111–117, section 743 of Div. C).

[] (7) 52.204-15, Service Contract Reporting Requirements for Indefinite-Delivery Contracts (OCT 2016) (Pub. L. 111–117, section 743 of Div. C).

[X] (8) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment. (OCT 2015) (31 U.S.C. 6101 note).

[X] (9) 52.209-9, Updates of Publicly Available Information Regarding Responsibility Matters (Jul 2013) (41 U.S.C. 2313).

Elevated  0000119

36C25618Q0375

[] (10) [Reserved]

[] (11)(i) 52.219-3, Notice of HUBZone Set-Aside or Sole-Source Award (NOV 2011) (15 U.S.C. 657a).

[] (ii) Alternate I (NOV 2011) of 52.219-3.

[] (12)(i) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (OCT 2014) (if the offeror elects to waive the preference, it shall so indicate in its offer) (15 U.S.C. 657a).

[] (ii) Alternate I (JAN 2011) of 52.219-4.

[] (13) [Reserved]

[] (14)(i) 52.219-6, Notice of Total Small Business Set-Aside (NOV 2011) (15 U.S.C. 644).

[] (ii) Alternate I (NOV 2011).

[] (iii) Alternate II (NOV 2011).

[] (15)(i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

[] (ii) Alternate I (Oct 1995) of 52.219-7.

[] (iii) Alternate II (Mar 2004) of 52.219-7.

[X] (16) 52.219-8, Utilization of Small Business Concerns (NOV 2016) (15 U.S.C. 637(d)(2) and (3)).

[] (17)(i) 52.219-9, Small Business Subcontracting Plan (JAN 2017) (15 U.S.C. 637(d)(4)).

[] (ii) Alternate I (NOV 2016) of 52.219-9.

[] (iii) Alternate II (NOV 2016) of 52.219-9.

[] (iv) Alternate III (NOV 2016) of 52.219-9.

[] (v) Alternate IV (NOV 2016) of 52.219-9.

[] (18) 52.219-13, Notice of Set-Aside of Orders (NOV 2011) (15 U.S.C. 644(r)).

[] (19) 52.219-14, Limitations on Subcontracting (JAN 2017) (15 U.S.C. 637(a)(14)).

[] (20) 52.219-16, Liquidated Damages—Subcontracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

[] (21) 52.219-27, Notice of Service-Disabled Veteran-Owned Small Business Set-Aside (NOV 2011) (15 U.S.C. 657f).

[X] (22) 52.219-28, Post Award Small Business Program Rerepresentation (Jul 2013) (15 U.S.C. 632(a)(2)).

[] (23) 52.219-29, Notice of Set-Aside for, or Sole Source Award to, Economically Disadvantaged Women-Owned Small Business Concerns (DEC 2015) (15 U.S.C. 637(m)).

36C25618Q0375

[] (24) 52.219-30, Notice of Set-Aside for, or Sole Source Award to, Women-Owned Small Business Concerns Eligible Under the Women-Owned Small Business Program (DEC 2015) (15 U.S.C. 637(m)).

[X] (25) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

[] (26) 52.222–19, Child Labor—Cooperation with Authorities and Remedies (JAN 2018) (E.O. 13126).

[X] (27) 52.222-21, Prohibition of Segregated Facilities (APR 2015).

[X] (28) 52.222–26, Equal Opportunity (SEP 2016) (E.O. 11246).

[X] (29) 52.222-35, Equal Opportunity for Veterans (OCT 2015) (38 U.S.C. 4212).

[X] (30) 52.222-36, Equal Opportunity for Workers with Disabilities (JUL 2014) (29 U.S.C. 793).

[X] (31) 52.222-37, Employment Reports on Veterans (FEB 2016) (38 U.S.C. 4212).

[X] (32) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010) (E.O. 13496).

[X] (33)(i) 52.222-50, Combating Trafficking in Persons (MAR 2015) (22 U.S.C. chapter 78 and E.O. 13627).

[] (ii) Alternate I (MAR 2015) of 52.222-50 (22 U.S.C. chapter 78 and E.O. 13627).

[X] (34) 52.222-54, Employment Eligibility Verification (OCT 2015). (E. O. 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

[] (35)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Items (May 2008) (42 U.S.C.6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

[] (ii) Alternate I (MAY 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

[] (36) 52.223-11, Ozone-Depleting Substances and High Global Warming Potential Hydrofluorocarbons (JUN 2016) (E.O. 13693).

[] (37) 52.223-12, Maintenance, Service, Repair, or Disposal of Refrigeration Equipment and Air Conditioners (JUN 2016) (E.O. 13693).

[] (38)(i) 52.223-13, Acquisition of EPEAT®-Registered Imaging Equipment (JUN 2014) (E.O.s 13423 and 13514).

[] (ii) Alternate I (OCT 2015) of 52.223-13.

[] (39)(i) 52.223-14, Acquisition of EPEAT®-Registered Televisions (JUN 2014) (E.O.s 13423 and 13514).

[] (ii) Alternate I (JUN 2014) of 52.223-14.

Elevated_0000121

36C25618Q0375

[] (40) 52.223-15, Energy Efficiency in Energy-Consuming Products (DEC 2007)(42 U.S.C. 8259b).

[] (41)(i) 52.223-16, Acquisition of EPEAT®-Registered Personal Computer Products (OCT 2015) (E.O.s 13423 and 13514).

[] (ii) Alternate I (JUN 2014) of 52.223-16.

[X] (42) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging While Driving (AUG 2011)

[] (43) 52.223-20, Aerosols (JUN 2016) (E.O. 13693).

[] (44) 52.223-21, Foams (JUN 2016) (E.O. 13693).

[] (45) (i) 52.224-3, Privacy Training (JAN 2017) (5 U.S.C. 552a).

[] (ii) Alternate I (JAN 2017) of 52.224-3.

[] (46) 52.225-1, Buy American—Supplies (MAY 2014) (41 U.S.C. chapter 83).

[] (47)(i) 52.225-3, Buy American—Free Trade Agreements—Israeli Trade Act (MAY 2014) (41 U.S.C. chapter 83, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, 19 U.S.C. 4001 note, Pub. L. 103-182, 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, 110-138, 112-41, 112-42, and 112-43.

[] (ii) Alternate I (MAY 2014) of 52.225-3.

[] (iii) Alternate II (MAY 2014) of 52.225-3.

[] (iv) Alternate III (MAY 2014) of 52.225-3.

[] (48) 52.225-5, Trade Agreements (OCT 2016) (19 U.S.C. 2501, et seq., 19 U.S.C. 3301 note).

[X] (49) 52.225-13, Restrictions on Certain Foreign Purchases (JUN 2008) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

[] (50) 52.225–26, Contractors Performing Private Security Functions Outside the United States (OCT 2016) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

[] (51) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

[] (52) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007) (42 U.S.C. 5150).

[] (53) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 4505, 10 U.S.C. 2307(f)).

[] (54) 52.232-30, Installment Payments for Commercial Items (JAN 2017) (41 U.S.C. 4505, 10 U.S.C. 2307(f)).

[X] (55) 52.232-33, Payment by Electronic Funds Transfer—System for Award Management (Jul 2013) (31 U.S.C. 3332).

Elevated  0000122

36C25618Q0375

[] (56) 52.232-34, Payment by Electronic Funds Transfer—Other than System for Award Management (Jul 2013) (31 U.S.C. 3332).

[] (57) 52.232-36, Payment by Third Party (MAY 2014) (31 U.S.C. 3332).

[] (58) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

[] (59) 52.242-5, Payments to Small Business Subcontractors (JAN 2017)(15 U.S.C. 637(d)(12)).

[] (60)(i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631).

[] (ii) Alternate I (Apr 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

[X] (1) 52.222-17, Nondisplacement of Qualified Workers (MAY 2014) (E.O. 13495).

[X] (2) 52.222-41, Service Contract Labor Standards (MAY 2014) (41 U.S.C. chapter 67).

[X] (3) 52.222-42, Statement of Equivalent Rates for Federal Hires (MAY 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

| Employee Class | Monetary Wage-Fringe Benefits |
|---|---|
| Elevator Repairer | $22.91 + 30% + FB |
| WG-10 | |

[X] (4) 52.222-43, Fair Labor Standards Act and Service Contract Labor Standards—Price Adjustment (Multiple Year and Option Contracts) (MAY 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

[] (5) 52.222-44, Fair Labor Standards Act and Service Contract Labor Standards—Price Adjustment (MAY 2014) (29 U.S.C 206 and 41 U.S.C. chapter 67).

[] (6) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment—Requirements (MAY 2014) (41 U.S.C. chapter 67).

[] (7) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services—Requirements (MAY 2014) (41 U.S.C. chapter 67).

[X] (8) 52.222-55, Minimum Wages Under Executive Order 13658 (DEC 2015).

[X] (9) 52.222-62, Paid Sick Leave Under Executive Order 13706 (JAN 2017) (E.O. 13706).

[] (10) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (MAY 2014) (42 U.S.C. 1792).

[] (11) 52.237-11, Accepting and Dispensing of $1 Coin (SEP 2008) (31 U.S.C. 5112(p)(1)).

Elevated_0000123

36C25618Q0375

(d) Comptroller General Examination of Record. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records—Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

(i) 52.203-13, Contractor Code of Business Ethics and Conduct (OCT 2015) (41 U.S.C. 3509).

(ii) 52.203-19, Prohibition on Requiring Certain Internal Confidentiality Agreements or Statements (JAN 2017) (section 743 of Division E, Title VII, of the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235) and its successor provisions in subsequent appropriations acts (and as extended in continuing resolutions)).

(iii) 52.219-8, Utilization of Small Business Concerns (NOV 2016) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities.

(iv) 52.222-17, Nondisplacement of Qualified Workers (MAY 2014) (E.O. 13495). Flow down required in accordance with paragraph (l) of FAR clause 52.222-17.

(v) 52.222-21, Prohibition of Segregated Facilities (APR 2015).

(vi) 52.222–26, Equal Opportunity (SEP 2016) (E.O. 11246).

(vii) 52.222-35, Equal Opportunity for Veterans (OCT 2015) (38 U.S.C. 4212).

(viii) 52.222-36, Equal Opportunity for Workers with Disabilities (JUL 2014) (29 U.S.C. 793).

(ix) 52.222-37, Employment Reports on Veterans (FEB 2016) (38 U.S.C. 4212).

Elevated 0000124

(x) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

(xi) 52.222-41, Service Contract Labor Standards (MAY 2014) (41 U.S.C. chapter 67).

(xii)(A) 52.222-50, Combating Trafficking in Persons (MAR 2015) (22 U.S.C. chapter 78 and E.O. 13627).

(B) Alternate I (MAR 2015) of 52.222-50 (22 U.S.C. chapter 78 and E.O. 13627).

(xiii) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment—Requirements (MAY 2014) (41 U.S.C. chapter 67).

(xiv) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services—Requirements (MAY 2014) (41 U.S.C. chapter 67).

(xv) 52.222-54, Employment Eligibility Verification (OCT 2015) (E. O. 12989).

(xvi) 52.222-55, Minimum Wages Under Executive Order 13658 (DEC 2015).

(xvii) 52.222-62 Paid Sick Leave Under Executive Order 13706 (JAN 2017) (E.O. 13706).

(xviii)(A) 52.224-3, Privacy Training (JAN 2017) (5 U.S.C. 552a).

(B) Alternate I (JAN 2017) of 52.224-3.

(xix) 52.225–26, Contractors Performing Private Security Functions Outside the United States (OCT 2016) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

(xx) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (MAY 2014) (42 U.S.C. 1792). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(xxi) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the Contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of Clause)

## C.2  52.217-8 OPTION TO EXTEND SERVICES (NOV 1999)

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within 30 days.

(End of Clause)

36C25618Q0375

## C.3  52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000)

(a) The Government may extend the term of this contract by written notice to the Contractor within 30 days; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option clause.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed four years, six months.

(End of Clause)

## C.4  52.228-5 INSURANCE—WORK ON A GOVERNMENT INSTALLATION (JAN 1997)

(a) The Contractor shall, at its own expense, provide and maintain during the entire performance of this contract, at least the kinds and minimum amounts of insurance required in the Schedule or elsewhere in the contract.

(b) Before commencing work under this contract, the Contractor shall notify the Contracting Officer in writing that the required insurance has been obtained. The policies evidencing required insurance shall contain an endorsement to the effect that any cancellation or any material change adversely affecting the Government's interest shall not be effective—

(1) For such period as the laws of the State in which this contract is to be performed prescribe; or

(2) Until 30 days after the insurer or the Contractor gives written notice to the Contracting Officer, whichever period is longer.

(c) The Contractor shall insert the substance of this clause, including this paragraph (c), in subcontracts under this contract that require work on a Government installation and shall require subcontractors to provide and maintain the insurance required in the Schedule or elsewhere in the contract. The Contractor shall maintain a copy of all subcontractors' proofs of required insurance, and shall make copies available to the Contracting Officer upon request.

(End of Clause)

## C.5  SUPPLEMENTAL INSURANCE REQUIREMENTS

In accordance with FAR 28.307-2 and FAR 52.228-5, the following minimum coverage shall apply to this contract:

(a) Workers' compensation and employers liability. Contractors are required to comply with applicable Federal and State workers' compensation and occupational disease statutes. If occupational diseases are not compensable under those statutes, they shall be covered under the employer's liability section of the insurance policy, except when contract operations are so commingled with a Contractor's commercial operations that it would not be practical to require this coverage. Employer's liability coverage of at least

36C25618Q0375

$100,000 is required, except in States with exclusive or monopolistic funds that do not permit workers' compensation to be written by private carriers.

(b) General Liability: $500,000.00 per occurrences.

(c) Automobile liability: $200,000.00 per person; $500,000.00 per occurrence and $20,000.00 property damage.

(d) The successful bidder must present to the Contracting Officer, prior to award, evidence of general liability insurance without any exclusionary clauses for asbestos that would void the general liability coverage.

(End of Clause)

## C.6 52.232-19 AVAILABILITY OF FUNDS FOR THE NEXT FISCAL YEAR (APR 1984)

Funds are not presently available for performance under this contract beyond 09/30/2018. The Government's obligation for performance of this contract beyond that date is contingent upon the availability of appropriated funds from which payment for contract purposes can be made. No legal liability on the part of the Government for any payment may arise for performance under this contract beyond 09/30/2018, until funds are made available to the Contracting Officer for performance and until the Contractor receives notice of availability, to be confirmed in writing by the Contracting Officer.

(End of Clause)

## C.7 VAAR 852.203-70 COMMERCIAL ADVERTISING (JAN 2008)

The bidder or offeror agrees that if a contract is awarded to him/her, as a result of this solicitation, he/she will not advertise the award of the contract in his/her commercial advertising in such a manner as to state or imply that the Department of Veterans Affairs endorses a product, project or commercial line of endeavor.

(End of Clause)

## C.8 VAAR 852.203-71 DISPLAY OF DEPARTMENT OF VETERAN AFFAIRS HOTLINE POSTER (DEC 1992)

(a) Except as provided in paragraph (c) below, the Contractor shall display prominently, in common work areas within business segments performing work under VA contracts, Department of Veterans Affairs Hotline posters prepared by the VA Office of Inspector General.

(b) Department of Veterans Affairs Hotline posters may be obtained from the VA Office of Inspector General (53E), P.O. Box 34647, Washington, DC 20043-4647.

(c) The Contractor need not comply with paragraph (a) above if the Contractor has established a mechanism, such as a hotline, by which employees may report suspected instances of improper conduct, and instructions that encourage employees to make such reports.

(End of Clause)

36C25618Q0375

## C.9  VAAR 852.215-70  SERVICE-DISABLED VETERAN-OWNED AND VETERAN-OWNED SMALL BUSINESS EVALUATION FACTORS (JUL 2016)(DEVIATION)

(a) In an effort to achieve socioeconomic small business goals, depending on the evaluation factors included in the solicitation, VA shall evaluate offerors based on their service-disabled veteran-owned or veteran-owned small business status and their proposed use of eligible service-disabled veteran-owned small businesses and veteran-owned small businesses as subcontractors.

(b) Eligible service-disabled veteran-owned offerors will receive full credit, and offerors qualifying as veteran-owned small businesses will receive partial credit for the Service-Disabled Veteran-Owned and Veteran-owned Small Business Status evaluation factor. To receive credit, an offeror must be registered and verified in Vendor Information Pages (VIP) database (https://www.vip.vetbiz.gov).

(c) Non-veteran offerors proposing to use service-disabled veteran-owned small businesses or veteran-owned small businesses as subcontractors will receive some consideration under this evaluation factor. Offerors must state in their proposals the names of the SDVOSBs and VOSBs with whom they intend to subcontract and provide a brief description of the proposed subcontracts and the approximate dollar values of the proposed subcontracts. In addition, the proposed subcontractors must be registered and verified in the VetBiz.gov VIP database (https://www.vip.vetbiz.gov).

(End of Provision)

## C.10  VAAR 852.215-71  EVALUATION FACTOR COMMITMENTS (DEC 2009)

The offeror agrees, if awarded a contract, to use the service-disabled veteran-owned small businesses or veteran-owned small businesses proposed as subcontractors in accordance with 852.215-70, Service-Disabled Veteran-Owned and Veteran-Owned Small Business Evaluation Factors, or to substitute one or more service-disabled veteran-owned small businesses or veteran-owned small businesses for subcontract work of the same or similar value.

(End of Clause)

## C.11  VAAR 852.219-10  VA NOTICE OF TOTAL SERVICE-DISABLED VETERAN-OWNED SMALL BUSINESS SET-ASIDE (JUL 2016)(DEVIATION)

(a) *Definition.* For the Department of Veterans Affairs, "Service-disabled veteran-owned small business concern or SDVSOB":

(1) Means a small business concern:

(i) Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans or eligible surviving spouses (see VAAR 802.201 Surviving Spouse definition);

(ii) The management and daily business operations of which are controlled by one or more service-disabled veterans (or eligible surviving spouses) or, in the case of a service-disabled veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran;

Elevated_0000128

(iii) The business meets Federal small business size standards for the applicable North American Industry Classification System (NAICS) code identified in the solicitation document;

(iv) The business has been verified for ownership and control pursuant to 38 CFR 74 and is so listed in the Vendor Information Pages database, (https://www.vip.vetbiz.gov); and

(v) The business will comply with subcontracting limitations in 13 CFR 125.6, as applicable

(2) "Service-disabled veteran" means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).

(b) *General*.

(1) Offers are solicited only from verified service-disabled veteran-owned small business concerns. Offers received from concerns that are not verified service-disabled veteran-owned small business concerns shall not be considered.

(2) Any award resulting from this solicitation shall be made to a verified service-disabled veteran-owned small business concern.

(c) *Agreement*. A service-disabled veteran-owned small business concern agrees that in the performance of the contract, the concern will comply with the limitation on subcontracting requirements in 13 CFR §125.6.

(d) A joint venture may be considered a service-disabled veteran owned small business concern if the joint venture complies with the requirements in 13 CFR 125.15, provided that any reference therein to SDVO SBC is to be construed to apply to a VA verified SDVOSB as appropriate.

(e) Any service-disabled veteran-owned small business concern (non-manufacturer) must meet the requirements in FAR 19.102(f) of the Federal Acquisition Regulation to receive a benefit under this program.

(End of Clause)

## C.12  VAAR 852.232-72 ELECTRONIC SUBMISSION OF PAYMENT REQUESTS (NOV 2012)

(a) *Definitions*. As used in this clause—

(1) *Contract financing payment* has the meaning given in FAR 32.001.

(2) *Designated agency office* has the meaning given in 5 CFR 1315.2(m).

(3) *Electronic form* means an automated system transmitting information electronically according to the

Accepted electronic data transmission methods and formats identified in paragraph (c) of this clause. Facsimile, email, and scanned documents are not acceptable electronic forms for submission of payment requests.

(4) *Invoice payment* has the meaning given in FAR 32.001.

(5) *Payment request* means any request for contract financing payment or invoice payment submitted by the contractor under this contract.

(b) *Electronic payment requests.* Except as provided in paragraph (e) of this clause, the contractor shall submit payment requests in electronic form. Purchases paid with a Government-wide commercial purchase card are considered to be an electronic transaction for purposes of this rule, and therefore no additional electronic invoice submission is required.

(c) *Data transmission.* A contractor must ensure that the data transmission method and format are through one of the following:

(1) VA's Electronic Invoice Presentment and Payment System. (See Web site at *http://www.fsc.va.gov/einvoice.asp.*)

(2) Any system that conforms to the X12 electronic data interchange (EDI) formats established by the Accredited Standards Center (ASC) and chartered by the American National Standards Institute (ANSI). The X12 EDI Web site (*http://www.x12.org*) includes additional information on EDI 810 and 811 formats.

(d) *Invoice requirements.* Invoices shall comply with FAR 32.905.

(e) *Exceptions.* If, based on one of the circumstances below, the contracting officer directs that payment requests be made by mail, the contractor shall submit payment requests by mail through the United States Postal Service to the designated agency office. Submission of payment requests by mail may be required for:

(1) Awards made to foreign vendors for work performed outside the United States;

(2) Classified contracts or purchases when electronic submission and processing of payment requests could compromise the safeguarding of classified or privacy information;

(3) Contracts awarded by contracting officers in the conduct of emergency operations, such as responses to national emergencies;

(4) Solicitations or contracts in which the designated agency office is a VA entity other than the VA Financial Services Center in Austin, Texas; or

(5) Solicitations or contracts in which the VA designated agency office does not have electronic invoicing capability as described above.

(End of Clause)

## C.13  VAAR 852.237-70 CONTRACTOR RESPONSIBILITIES (APR 1984)

The contractor shall obtain all necessary licenses and/or permits required to perform this work. He/she shall take all reasonable precautions necessary to protect persons and property from injury or damage during the performance of this contract. He/she shall be responsible for any injury to himself/herself, his/her employees, as well as for any damage to personal or public property that occurs during the performance of this contract that is caused by his/her employees fault or negligence, and shall maintain personal liability and property damage insurance having coverage for a limit as required by the laws of the State of Mississippi and Florida. Further, it is agreed that any negligence of the Government, its

36C25618Q0375

officers, agents, servants and employees, shall not be the responsibility of the contractor hereunder with the regard to any claims, loss, damage, injury, and liability resulting there from.

(End of Clause)

## C.14  52.252-2  CLAUSES INCORPORATED BY REFERENCE  (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://www.acquisition.gov/far/index.html
http://www.va.gov/oal/library/vaar/

(End of Clause)

| FAR Number | Title | Date |
|---|---|---|
| 52.203-16 | PREVENTING PERSONAL CONFLICTS OF INTEREST | DEC 2011 |
| 52.203-17 | CONTRACTOR EMPLOYEE WHISTLEBLOWER RIGHTS AND REQUIREMENT TO INFORM EMPLOYEES OF WHISTLEBLOWER RIGHTS | APR 2014 |
| 52.204-4 | PRINTED OR COPIED DOUBLE-SIDED ON RECYCLED PAPER | MAY 2011 |
| 52.212-4 | CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS | JAN 2017 |
| 52.232-40 | PROVIDING ACCELERATED PAYMENTS TO SMALL BUSINESS SUBCONTRACTORS | DEC 2013 |

# SUBCONTRACT AGREEMENT

This Subcontract Agreement ("Subcontract") is entered into as of APRIL 1, 2018, by and between Elevator Service, Inc. ("ESI" or "Prime Contractor"), and DIVERSIFIED ELEVATOR SERVICE & EQUIPMENT CO., INC ("DIVERSIFIED ELEVATOR SERVICE & EQUIPMENT CO., INC" or "Subcontractor"). Prime Contractor and Subcontract may be referred to individually herein as "Party" or collectively as the "Parties."

## RECITALS

WHEREAS, Prime Contractor has been awarded a Contract with the Department of Veterans Affairs ("VA" or the "Government") under Solicitation No. 36C25618Q0375 ("Prime Contract") to provide repair services, safety inspections, and testing for elevators at the

WHEREAS, Prime Contractor desires that Subcontractor perform certain services in connection with the performance of the Prime Contract, and Subcontractor has the resources, experience, and time available and has agreed to perform such services;

WHEREAS, Prime Contractor has assigned Subcontractor's services a North American Industry Classification System ("NAICS") Code of 238290, Other Building Equipment Contractors, with a corresponding size standard of $15.0 million;

WHEREAS, Prime Contractor desires and Subcontractor agrees that the work to be performed under this Subcontract shall be on a firm-fixed-price basis as outlined in Exhibits A and B to this Subcontract;

THEREFORE, in consideration of the promises and covenants contained herein, the parties agree as follows:

## AGREEMENT

### 1. DURATION OF SUBCONTRACT

1.1   Period of Performance. The initial period of performance of this Subcontract is January 1, 2018 to December 31, 2018. Notwithstanding the foregoing and the provisions of Paragraph 1.2, this Subcontract may be terminated in accordance with its Termination provisions.

1.2   Option to Extend the Term of the Subcontract. The initial period of performance may be extended by written amendments to this Subcontract. Any extension is contingent upon VA exercising one or more of its four twelve-month sequential options under the Prime Contract. The Government may renew an option by exercising the following Option Years:

| | |
|---|---|
| Base Period: | 04/01/2018 to 03/31/2018 |
| Option Year 1: | 04/01/2019 to 03/31/2019 |
| Option Year 2: | 04/01/2020 to 03/31/2020 |

1



| Option Year 3: | 04/01/2021 to 03/31/2021 |
| Option Year 4: | 04/01/2022 to 03/31/2022 |

Prime Contractor has sole discretion as to whether to exercise an option. Prime Contractor may, at its discretion, decline to exercise an option even where the Government exercises an option under the Prime Contract.

1.3 <u>Size Representation</u>. Subcontractor certifies that its size representations in the System for Award Management ("SAM"), if applicable, are current, accurate, and complete, and may be relied upon by Prime Contractor in determining whether Subcontractor is an eligible small business, small disadvantaged business, veteran-owned small business, HUBZone small business, and/or women-owned small business.

2. **SERVICES**

2.1 <u>Scope of Services Generally</u>. Subcontractor shall furnish necessary personnel, services, materials, equipment, tools, incidental engineering services, and transportation, and otherwise do all things necessary to the delivery of all tasks, items, and deliverables to perform the general services described in Exhibit A. Subcontractor shall perform all work with its own materials, equipment, tools, and transportation. If at any time during the contract performance VA modifies the Prime Contractor's scope of work, the Parties agree to renegotiate in good faith Subcontractor's work to the extent that Subcontractor's work is impacted by such Prime Contract modification. Subcontractor will also provide other resources based on future amendments to Exhibit A as agreed upon by both parties. Subcontractor understands and acknowledges that it is an independent subcontractor, and not an employee of Prime Contractor. Accordingly, Subcontractor shall not be entitled to any compensation for overtime, except as provided in this Subcontract.

2.2 <u>Independent Subcontractor</u>. The Subcontractor enters into this Agreement as an independent subcontractor and not an employee of ESI. The Subcontractor shall exercise its own discretion and judgment in the performance of the services and in accordance with good business practices customary for the performance of such services in similar circumstances. Under no circumstances shall the Subcontractor look to ESI as its employer, or as a partner, agency, or principal. Neither Subcontractor nor its employees shall be entitled to any employment benefits accorded to ESI's employees, including without limitation, worker's compensation, disability insurance, vacation, or sick pay. Subcontractor shall be responsible for providing, at Subcontractor's expense, and in Subcontractor's name, malpractice, unemployment, disability, worker's compensation, professional liability insurance, and other insurance, as well as licenses and permits, usual or necessary for conducting the services. Evidence of insurances, licenses, and permits shall be provided to ESI before work commences.

2.3 <u>Authorized Services</u>. Subcontractor shall provide only work that is authorized in writing by Prime Contractor and identified in Exhibit A or provided in a supplemental Statement of Work ("SOW"). Costs incurred for work undertaken that was not authorized under Exhibit A or a supplemental SOW will be considered unallowable under this Subcontract.

2

Elevated_0000134

2.4     Best Efforts: Subcontractor agrees to use its best efforts to accomplish all the work identified in Exhibit A. Subcontractor's obligation will be deemed complete if: (i) the Subcontractor's work is performed in accordance with specifications/deliverables identified in the Exhibit A and are accepted by Prime Contractor; (ii) all requirements of the Prime Contract and this Subcontract have been met; and (iii) the Subcontractor's services are accepted by the Government.

2.5     Non-Exclusive: The Parties agree that this Subcontract is non-exclusive and ESI may enter into an agreement with one or more subcontractors who shall be assigned to perform portions of the Prime Contract's Scope of Work as determined by ESI, and Subcontractor may enter into an agreement with one or more prime contractors.

2.6     Modification or Amendment by the Government. In the event that the Prime Contract (including without limitation, the Prime Contract scope of work), is modified or amended by the Government, Prime Contractor shall have the right to make a corresponding modification or amendment in writing to this Subcontract. To the extent that the modification affects the price of the Subcontract, the Parties will use best efforts to agree on the amendment or the Prime Contractor may go forward and use its own resources to ensure timely performance of the services. Unless directed in writing to stop work by the Prime Contractor, nothing in this clause shall excuse the Subcontractor from proceeding with performance of the Subcontract as revised by the modification.

2.7     Limitation on Subcontracting. Subcontractor acknowledges that VA Acquisition Regulation 852.219-11 (Notice of Total Veteran-Owned Small Business Set-Aside) and 13 C.F.R. § 125.6 (Prime Contractor's Limitations on Subcontracting) are incorporated in the Prime Contract and require the Prime Contractor perform, using its own organization, the percentage of work required under the clauses. Subcontractor shall cooperate fully and make available any records as may be required to enable the Government to assess compliance with the applicable limitation on subcontracting. In order to ensure that the limitation on subcontracting is met for each period of performance under the Prime Contract, Prime Contractor shall have the right to amend or modify Subcontractor's scope of work if, at any time in Prime Contractor's reasonable discretion, Prime Contractor believes that such amendment or modification is necessary or desirable to ensure that Prime Contractor performs the requisite amount of work.

3.     **COMPENSATION, INVOICING, AND PAYMENT**

3.1     Compensation. Subcontractor shall be reimbursed for its work in accordance with Exhibit B, which is hereby incorporated by reference into this Subcontract. For any additional work not covered by Exhibit B, Prime Contractor and Subcontractor shall mutually agree on additional payment terms. Subcontractor may be entitled to additional payment with the prior approval of the Prime Contractor. The Subcontractor may be required to reduce work with corresponding reduced compensation upon the prior notification of the Prime Contractor.

3.2     Invoicing.

3

Elevated_0000135

3.2.1 Submission of Invoices. Written invoices shall be submitted to Prime Contractor on a monthly basis no later than five (5) days after the last day of the prior month. A final written invoice shall be submitted to Prime Contractor within five (5) days following the completion of performance under the Prime Contract. Subcontractor is required to submit invoices on a timely basis. Prime Contractor shall have no liability for any services rendered or costs incurred by Subcontractor that have not been submitted on an invoice to Prime Contractor within sixty (60) days of the date the costs were incurred. Written notification shall be provided to Prime Contractor for any perceived or noted discrepancy in payment, along with supporting documentation, within thirty (30) days of being paid for the period invoiced, or Prime Contractor shall not be liable for those costs incurred.

3.2.2 Form and Content of Invoices. Invoices shall be submitted on the Subcontractor's letterhead and shall be signed by an authorized representative of the Subcontractor. Invoices shall include the following required elements:

(i) ESI's name and billing address;
(ii) Remittance name and address;
(iii) Unique invoice number;
(iv) Dates of invoice period;
(v) Description, quantity, unit of measure, unit price, and extended price of the items delivered;
(vi) Shipping number and date of shipment, including the bill of lading number and weight of shipment if shipped on Government bill of lading;
(vii) Total amount due; and
(i) Name, title, phone number, and mailing address of the Subcontractor personnel to be notified in the event of a defective invoice.

3.2.3 Submission of Invoices. Invoices shall be submitted electronically to:

Elevator Service, Inc.
Attn: Accounts Payable
info@eslgr.com

3.2.4 Signature and Certification. Subcontractor's submission of an invoice to Prime Contractor constitutes Subcontractor's certification that the invoiced amounts are properly due and owing for work performed by Subcontractor. Subcontractor agrees, to the fullest extent permitted by law, to defend, indemnify, and hold harmless Prime Contractor for any and all claims or liabilities, including any claims or liabilities under the False Claims Act, 31 U.S.C. sections 3729-3733, arising from Subcontractor's submission of any inaccurate or false invoice.

4

Elevated_0000136

3.2.5 Separate Invoices. The Subcontractor shall submit no more than one invoice per month for hours worked. Separate invoices must be submitted for other goods or services rendered.

3.2.6 Records. Subcontractor shall maintain all records, including invoices, related to this Subcontract, for three (3) years following final payment, or the conclusion of any dispute arising out of or related to this Subcontract, whichever is later. Upon reasonable notice, Subcontractor shall make such records available for inspection by the Government in a manner consistent with the requirements of applicable federal and state laws. In the event an audit of Subcontractor's records implicates Prime Contractor, Prime Contractor shall have the right to access the same records provided by Subcontractor to the Government.

3.3   Payment. Upon receipt of a proper invoice for work performed by Subcontractor, Prime Contractor shall make payment Net 10 days after receipt of invoice from Subcontractor and payment from VA covering the work invoiced. Prime Contractor shall have no obligation to make payment of any invoiced amounts that are not approved by VA or Prime Contractor. Specific identification of the non-approved amount should identify Subcontractor's effort in such in order for Prime Contractor to not pay Subcontractor. Subcontractor understands and acknowledges that Prime Contractor's receipt of funds covering Subcontractor's specific work from the Government is a strict condition precedent to the Prime Contractor's obligation to make payment for invoiced amounts.

3.4   Disputed Amounts. If any dispute arises as to the amounts properly due and owing Subcontractor, the dispute shall be resolved in accordance with the Disputes provisions of this Subcontract. Prime Contractor shall have no obligation to pay any disputed amounts until final resolution of the dispute.

4   **TERMS OF THE PRIME CONTRACT**

4.1   Contract Clauses Specifically Incorporated by Reference. The Subcontract incorporates to the fullest extent possible, the following FAR and VAAR clauses required by the Prime Contract.

4.1.1 Contractor Employee Whistleblower Rights and Requirement to Inform Employees of Whistleblower Rights. The Prime Contract includes Federal Acquisition Regulation ("FAR") 52.203-17 (Contractor Employee Whistleblower Rights and Requirement to Inform Employees of Whistleblower Rights), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.203-17 as if the clause were set forth in full text in this Subcontract.

4.1.2 Prohibition on Requiring Certain Internal Confidentiality Agreements or Statements. The Prime Contract includes FAR 52.203-19 (Prohibition on Requiring Certain Internal Confidentiality Agreements or Statements), which is hereby incorporated by reference in this Subcontract. The

5

Elevated_0000137

Subcontractor shall comply with all applicable provisions of FAR 52.203-19 as if the clause were set forth in full text in this Subcontract.

4.1.3   Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment. The Prime Contract includes FAR 52.209-6 (Protective Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.209-6 as if the clause were set forth in full text in this Subcontract.

4.1.4   Insurance—Work on a Government Installation. The Prime Contract includes FAR 52.228-5 (Insurance—Work on a Government Installation), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.228-5 as if the clause were set forth in full text in this Subcontract.

4.1.5   Providing Accelerated Payments to Small Business Subcontractors. The Prime Contract includes FAR 52.232-40 (Providing Accelerated Payments to Small Business Subcontractors), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.232-40 as if the clause were set forth in full text in this Subcontract.

4.1.6   Nondisplacement of Qualified Workers. The Prime Contract includes FAR 52.222-17 (Nondisplacement of Qualified Workers), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-17 as if the clause were set forth in full text in this Subcontract.

4.1.7   Prohibition on Segregated Facilities. The Prime Contract includes FAR 52.222-21 (Prohibition on Segregated Facilities), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-21 as if the clause were set forth in full text in this Subcontract.

4.1.8   Equal Opportunity. The Prime Contract includes FAR 52.222-26 (Equal Opportunity), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-26 as if the clause were set forth in full text in this Subcontract.

4.1.9   Equal Opportunity for Veterans. The Prime Contract includes FAR 52.222-35 (Equal Opportunity for Veterans), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-35 as if the clause were set forth in full text in this Subcontract.

6

Elevated_0000138

4.1.10 Equal Opportunity for Workers with Disabilities. The Prime Contract includes FAR 52.222-36 (Equal Opportunity for Workers with Disabilities), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-36 as if the clause were set forth in full text in this Subcontract.

4.1.11 Employment Reports on Veterans. The Prime Contract includes FAR 52.222-37 (Employment Reports on Veterans), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-37 as if the clause were set forth in full text in this Subcontract.

4.1.12 Notification of Employees Rights Under the National Relations Act. The Prime Contract includes FAR 52.222-40 (Notification of Employees Rights Under the National Relations Act), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-40 as if the clause were set forth in full text in this Subcontract.

4.1.13 Combating Trafficking in Persons. The Prime Contract includes FAR 52.222-50 (Combating Trafficking in Persons), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-50 as if the clause were set forth in full text in this Subcontract.

4.1.14 Employment Eligibility Verification. The Prime Contract includes FAR 52.222-54 (Employment Eligibility Verification), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-54 as if the clause were set forth in full text in this Subcontract.

4.1.15 Encouraging Contract Policies to Ban Text Messaging While Driving. The Prime Contract includes FAR 52.223-18 (Encouraging Contract Policies to Ban Text Messaging While Driving), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.223-18 as if the clause were set forth in full text in this Subcontract.

4.1.16 Restrictions on Certain Foreign Purchases. The Prime Contract includes FAR 52.225-13 (Restrictions on Certain Foreign Purchases), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.225-13 as if the clause were set forth in full text in this Subcontract.

4.1.17 Service Contract Labor Standards. The Prime Contract includes FAR 52.222-41 (Service Contract Labor Standards), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable

7

Elevated_0000139

provisions of FAR 52.222-41 as if the clause were set forth in full text in this Subcontract.

4.1.18 Statement of Equivalent Rates for Federal Hires. The Prime Contract includes FAR 52.222-42 (Statement of Equivalent Rates for Federal Hires), which is hereby incorporated by reference in this Subcontract and includes the following:

| Employee Class | Monetary Wage-Fringe Benefits |
| 23210 Elevator Repair | $49.15 +$15.275 |

The Subcontractor shall comply with all applicable provisions of FAR 52.222-42 as if the clause were set forth in full text in this Subcontract.

4.1.19 Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment -- Requirements. The Prime Contract includes FAR 52.222-51 (Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment – Requirements), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-51 as if the clause were set forth in full text in this Subcontract.

4.1.20 Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services—Requirement. The Contract includes FAR 52.222-53 (Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services—Requirement), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-53 as if the clause were set forth in full text in this Subcontract.

4.1.21 Minimum Wages under Executive Order 13658. The Prime Contract includes FAR 52.222-55 (Minimum Wages under Executive Order 13658), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-55 as if the clause were set forth in full text in this Subcontract.

4.1.22 Paid Sick Leave under Executive Order 13706. The Prime Contract includes FAR 52.222-62 (Paid Sick Leave under Executive Order 13706), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.222-62 as if the clause were set forth in full text in this Subcontract.

4.1.23 Privacy Training – Alternate I. The Prime Contract includes FAR 52.224-3 (Privacy Training – Alternate I), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable

8

Elevated_0000140

provisions of FAR 52.224-3 as if the clause were set forth in full text in this Subcontract.

4.1.24  Preference for Privately Owned U.S.-Flag Commercial Vessels. The Prime Contract includes FAR 52.247-64 (Preference for Privately Owned U.S.-Flag Commercial Vessels), which is hereby incorporated by reference in this Subcontract. The Subcontractor shall comply with all applicable provisions of FAR 52.247-64 as if the clause were set forth in full text in this Subcontract.

4.2  Other Clauses Incorporated by Reference. This Subcontract incorporates also, to the fullest extent possible, all FAR, VAAR, and other clauses required by the Prime Contract and/or applicable law to be included in this Subcontract, as well as all provisions of the Prime Contract applicable to Subcontractor. Prime Contractor and Subcontractor will comply with all such clauses with the same force and effect as if they were given in full text herein. Where the words "Contracting Officer" and "Government" appear in the Prime Contract, or any clauses incorporated by reference into the Prime Contract, such terms shall be deemed to refer to Prime Contractor's Project Manager and Prime Contractor, respectively, as applicable. Where the word "Contractor" appears in the Prime Contract, or in any clauses incorporated by reference into the Prime Contract, such word shall be deemed to refer to Subcontractor. Where the word "Subcontractor" appears in the Prime Contract, or in any clauses incorporated by reference into the Prime Contract, such word shall be deemed to refer to Subcontractor's subcontractors, if any.

4.3  Order of Precedence. The clauses incorporated in this Subcontract shall, to the greatest extent possible, be deemed to be cumulative to the terms, conditions, and requirements of this Subcontract. In the case of an irreconcilable conflict between this Subcontract and any clause from the Prime Contract, including FAR and VAAR clauses, incorporated herein, the provisions of this Subcontract shall control over provisions of the Prime Contract, except for those clauses of the Prime Contract that are required by law or regulation, or the terms of the Prime Contract, to be flowed down to Subcontractor.

4.4  Exceptions to Flow Down Requirements. The following circumstances are exceptions to the flow down requirements above, and the general rules of construction for flow down clauses set forth above:

(i)  Where it is clear, by the context of the provision itself or the conditions under which it is being applied, that the reference is intended to refer to the Government, its officers or agents, or the prime contractor specifically;

(ii)  Where an explicit provision of this Subcontract states a contrary intent;

(iii)  Where access to proprietary financial information or other proprietary data is required;

(iv)  Where the provision would impose duties on the Prime Contractor beyond those explicitly stated in this Subcontract; or

(v)  Where interpretation in accordance with the rules stated above would place the Prime Contractor in a position of violating the equivalent or

9

Elevated_0000141

related provisions of the Prime Contract whereas construction of the terms without modification would not.

4.5     Service Contract Act/Davis Bacon. This Service Contract Act/Davis Bacon is applicable to this Subcontract. Subcontractor hereby agrees to pay its employees no less than the prevailing wage and fringe benefits specified in the applicable Wage Determination. The applicable Wage Determination, SCA/DB Wage Determination 84-0472 (Rev. -35) (June 7, 2017), is attached as Exhibit C to this Subcontract. Should a new Wage Determination be made applicable to the Prime Contract during the course of Prime Contractor's performance of the Prime Contract, that new Wage Determination shall be promptly provided to Subcontractor, this Subcontract shall be automatically amended to incorporate the new Wage Determination, and the Subcontractor shall be responsible for paying the prevailing wage rates specified in the new Wage Determination.

## 5     ASSIGNMENT AND SUBCONTRACTING

5.1     Limitation on Assignment. Subcontractor shall not assign this Subcontract, in whole or part, or any of the monies due or to become due hereunder, without prior written consent of Prime Contractor.

5.2     Lower-Tier Subcontracting. Subcontractor shall not enter into any lower-tier Subcontract for any portion of this Subcontract without first obtaining Prime Contractor's written approval thereof; provided, however, that this limitation shall not apply to Subcontractor's purchase of standard commercial supplies. Any lower-tier subcontract awarded shall be consistent with the objective of this Subcontract, the Prime Contract, the FAR, and the VAAR.

## 6     INSPECTION, ACCEPTANCE, AND NOTICES

6.1     Defects or Deficiencies in Subcontractor's Work. If any of the services performed by Subcontractor do not conform to Subcontract or Prime Contract requirements, Prime Contractor may require Subcontractor to perform the services again in conformity with Subcontract requirements, for no additional fee. The Prime Contractor's designated representative is responsible for the inspection and acceptance of Subcontractor's work. When the defects in services cannot be corrected by re-performance, Prime Contractor may: (a) require Subcontractor to take necessary action to ensure that future performance conforms to contract requirements; and/or (b) reduce any fee payable under the Subcontract to reflect the reduced value of the services performed.

6.2     Failure of Subcontractor to Perform or Make Corrections. If Subcontractor fails to proceed with reasonable promptness to perform any services under this Subcontract or to re-perform or make corrections as outlined above, Prime Contractor may: (a) by subcontract or otherwise perform such re-performance or correction and charge to Subcontractor any increased cost occasioned by Prime Contractor thereby; and/or (b) reduce any payment due under this Subcontract (or require repayment of any payments previously made hereunder) in such amount as may be equitable under the circumstances;

10

Elevated_0000142

and/or (c) terminate this Subcontract for default or convenience in accordance with Section 7.

6.3     Cost Adjustments. Subcontractor's failure to agree to the amount of any cost adjustment referenced in this Section shall be deemed to be a dispute concerning a question of fact within the meaning of the "Disputes" provisions of this Subcontract.

6.4     Remedies Cumulative. The remedies provided in this Section are in addition to, and not in limitation of, any other rights or remedies that Prime Contractor may have under this Subcontract or applicable law.

6.5     Inspection by Government. The inspection by the Government of any portion or aspect of Subcontractor's work does not relieve Subcontractor of responsibility for any deficiencies or nonconformance or other failures to meet the Subcontract requirements.

6.6     Notices. Subcontractor shall provide any notices to Prime Contractor as may be reasonably required to permit Prime Contractor to fulfill its obligations of notice to the Government. All notices by Subcontractor to Prime Contractor shall be sufficient if in writing and personally delivered; emailed, or sent by overnight mail, postage prepaid, addressed as follows:

> Elevator Service, Inc.
> Attn: Vince McFadden
> 827 Ottawa NW
> Grand Rapids, MI 49503
> vcmcfadden@esigr.com

All notices by Prime Contractor to Subcontractor shall be sufficient if in writing and personally delivered, emailed, or sent by overnight mail, postage prepaid, addressed as follows:

> DIVERSIFIED ELEVATOR SERVICE & EQUIPMENT CO., INC
> Attn: Hunter Ziegler
> 297 State Hwy 143
> Millbrook, AL 36054
> Hunter@diversifiedelevator.net
> Taylor@diversifiedelevator.net

Either Party may change the person or address to which notices are sent by providing written notice thereof to the other Party

## 7   TERMINATION

7.1     This Subcontract may be terminated upon the occurrence of any of the following events:

11

Elevated_0000143

(i)   Mutual written agreement of the Parties;

(ii)   By Prime Contractor, upon written notice, if Subcontractor is not meeting its performance levels as defined by the Prime Contractor and/or has not resolved specific disputes; or if Subcontractor materially defaults in the performance of this Subcontract and Subcontractor fails to cure such default within ten (10) calendar days of receipt of written notification of its default by Prime Contractor; or if Subcontractor fails to cure any defect in its performance raised by the Government within ten (10) calendar days of receipt of written notice of such defect;

(iii)   If either Party is: (1) is unable to meet its financial obligations as they become due in the ordinary course of business; (2) admits in writing its inability to pay its debts; (3) files a petition under any chapter of the Bankruptcy Act, 11 U.S.C. §§ 101 et seq. ("Act"); (4) has an involuntary petition under the Act filed against it; (5) commences an action in any country under laws providing for the relief of winding up of insolvent or liquidating persons or entities; (6) files for the appointment of a receiver; (7) becomes insolvent; or (8) makes an assignment for the benefit of creditors, and such matters are not discharged or relieved within sixty (60) days;

(iv)   By Prime Contractor in the event Subcontractor fails to diligently and timely perform the work under the Subcontract in accordance with the reasonable direction of Prime Contractor, and such failure continues for a period of five (5) calendar days after Subcontractor receives written notice from Prime Contractor; or

(v)   By Prime Contractor, for convenience, in accordance with the termination for convenience provision in the Prime Contract, regardless of whether the Government terminations the Prime Contract for convenience.

7.2   Termination of Prime Contract. If the Prime Contract is terminated for any reason by the Government with or without cause, then this Subcontract shall be deemed to have been simultaneously terminated as of the date of termination of the Prime Contract.

8   DISPUTES

8.1   Good Faith Efforts. The Parties agree to use good faith efforts to amicably resolve any disputes arising under this Subcontract without recourse to arbitration or litigation.

8.2   Government-Related Disputes. In the event Subcontractor makes any claim involving any action or directive by the Government, or any question as to Subcontractor's compliance with the Prime Contract ("Government-Related Dispute"), Subcontractor shall

12

Elevated_0000144

submit its claim to Prime Contractor as a pass-through claim for presentation to the Government. If Subcontractor chooses to present a pass-through claim against the Government, the following provisions will apply.

8.2.1   Claim Presentation. Prime Contractor, upon request by Subcontractor, shall present Subcontractor's Government-Related Dispute to the Government as a pass-through claim for resolution under the disputes provisions of the Prime Contract. Prime Contractor agrees to present such claims for and on behalf of Subcontractor and to pass Subcontractor's Government-Related Disputes through to the Government in good faith.

8.2.2   Costs, Fees, and Expenses. Subcontractor shall bear all costs, fees, and expenses associated with Prime Contractor's presentation of Subcontractor's Government-Related Disputes to the Government.

8.2.3   Exclusive Remedy. The pass-through process described above shall be Subcontractor's only remedy for Government-Related Disputes. Subcontractor shall make no claims against the Prime Contractor for Government-Related Disputes, and any such claims shall be dismissed.

8.3   Arbitration. All claims and disputes arising under or relating to this Subcontract that are not Government-Related Disputes are to be settled by binding arbitration in the State of Michigan. The arbitration shall be conducted on a confidential basis pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Any such arbitration shall include a written record of the arbitration hearing. An award of arbitration may be confirmed in a court of competent jurisdiction.

8.4   Applicable Law. The laws of the State of Michigan shall govern the construction and interpretation of the rights and duties of the Parties under this Agreement.

8.5   Duty to Perform. Pending final decision on any dispute under this Article, Prime Contractor and Subcontractor will proceed with performance.

9   **PROPRIETARY DATA/INFORMATION**

9.1   Proprietary Information Generally. The Party receiving the proprietary information described below shall be hereinafter referred to as a Receiving Party. The Receiving Party agrees to keep in confidence and prevent the unauthorized disclosure of the proprietary information to any person or persons outside its organization, and agrees to only disclose such information to individuals within the Receiving Party's organization that require knowledge of the information for performance of this Subcontract. The Receiving Party agrees further not to use for a purpose other than for which furnished (and then only with appropriate restrictions governing its use), any and all data and information including all data and information previously furnished by the other Party (hereinafter referred to as the "Transmitting Party") deemed proprietary or confidential in nature by the Transmitting Party. The Receiving Party shall not be liable for unauthorized disclosure of any such data or information if the same:

13

Elevated_0000145

(i)   is in the public domain at the time it was disclosed;
(ii)  is known to the Receiving Party at the time of receipt;
(iii) is disclosed inadvertently despite the exercise of the same degree of care as the Receiving Party takes to preserve and safeguard its own proprietary information, provided that such degree of care is commercially reasonable, and provided also that any person having access to such information shall be advised of the contents of this Subcontract;
(iv)  is disclosed with a written approval of the Transmitting Party;
(v)   was independently developed by the Receiving Party; or
(vi)  becomes known to the Receiving Party from a source other than the Transmitting Party, its agents or assigns.

9.2   Authorized Recipients. Each Party shall designate in writing the individual or individuals authorized to receive proprietary information under this Subcontract, and either Party may change its designation by written notice to the other.

9.3   Definition of Proprietary Information. Proprietary information is defined as, but not limited to, performance, sales, financial, contractual, and special marketing information, ideas, technical data, and concepts originated by the Transmitting Party, not previously published or otherwise disclosed to the general public, not previously available to the Receiving Party or others without restriction, not normally furnished to others without compensation, and which the Transmitting Party desires to protect against unrestricted disclosure or competitive use, and which is furnished pursuant to this Subcontract.

9.4   Duty of Non-disclosure. The Receiving Party of proprietary information agrees to hold such information in confidence for a period of two (2) years from the termination of this Subcontract. If the Receiving Party of proprietary information seeks to disclose proprietary information of the Transmitting Party, the Receiving Party shall obtain written approval of the Transmitting Party prior to disclosure of proprietary information. Written approval for disclosure of proprietary information from Prime Contractor shall only be valid if granted by [INSERT ESI EMPLOYEE]. Written approval for disclosure of proprietary information from Subcontractor shall only be valid if granted by HUNTER ZIEGLER OR TAYLOR ZIEGLER. Either Party may change its designation by written notice to the other.

9.5   Notification of Disclosure. If the Receiving Party is required, as a result of a judicial or regulatory proceeding, by subpoena, civil investigative demand, or other similar legal process to disclose any proprietary information of the Transmitting Party, the Receiving Party will notify the Transmitting Party promptly so the Transmitting Party can seek a protective order or other appropriate remedy or, in the Transmitting Party's sole discretion, waive compliance with this Subcontract. In the event no such protective order is obtained or the Transmitting Party waives compliance with the relevant portions of this Subcontract, the Receiving Party will furnish only that portion of the proprietary

14

Elevated_0000146

information which, in the opinion of the Receiving Party's counsel, is legally required to be disclosed.

## 10   SUBCONTRACTOR LIABILITY

In the event of Subcontractor's failure to perform in accordance with this Subcontract, whether such failure is occasioned by the negligent acts or omissions of Subcontractor, its subcontractors, suppliers, or agents, Prime Contractor may pursue against Subcontractor any and all damages and remedies available under this Subcontract and/or applicable law.

## 11   INDEMNITY

11.1   Prime Contractor and Subcontractor each shall indemnify and hold the other harmless from any and all claims, actions, damages and liabilities (including reasonable attorneys' fees) arising directly and proximately out of: (a) the indemnifying Party's negligence, or willful, wanton, or reckless conduct; (b) the breach of any representation, term, or covenant in this Subcontract; (c) the violation of any law or regulations applicable to the performance of this Subcontract; (d) the submission of false claims or any allegation of defective pricing.

11.2   The indemnity contained in this Section is conditioned upon the indemnifying party receiving: (a) prompt written notice of any claim, demand, or action for which indemnity is sought; (b) cooperation in the defense by the party seeking indemnity; and (c) control of the defense and/or settlement of such claim, demand, or action for which indemnity is sought.

## 12   CONFLICTS OF INTEREST, HIRING, AND COMPETITION

12.1   Organizational Conflicts of Interest. The Subcontractor warrants that, to the best of the Subcontractor's knowledge and belief, there are no relevant facts or circumstances which would give rise to an organizational conflict of interest, as defined in FAR Subpart 9.5. The Subcontractor agrees that if an actual or potential organizational conflict of interest is discovered after execution of this Subcontract, the Subcontractor will make a full disclosure in writing to ESI within two (2) business days, under terms of confidentiality, for submission by ESI directly to the Government. This disclosure shall include a description of actions which the Subcontractor has taken or proposes to take, after consultation between ESI and the Subcontractor to avoid, mitigate, or neutralize the actual or potential conflict. Should an actual, potential, or apparent organizational conflict of interest arise with respect to the Subcontractor, that, in the reasonable opinion of ESI and/or the Government, ESI may terminate this Subcontract.

12.2   Third Party Conflicts of Interest. The Subcontractor represents that the Subcontractor is free to enter into this Subcontract and that this engagement does not violate the terms of any agreement between the Subcontractor and any third party. Further, the Subcontractor, in performing the services, shall not utilize any invention, discovery,

15

Elevated_0000147

development, improvement, innovation, or trade secret in which the Subcontractor does not have a proprietary interest.

12.3 Hiring/Employment Restrictions. Neither party shall, during the term of this Subcontract nor for a period of one (1) year after its termination, solicit for employment or employ, whether as employee or independent contractor, any person who is or has been employed by the other party during the term of this Subcontract and was introduced to the hiring party through performance of the contract, without the prior written consent of the other party.

12.4 Communications the Government. Throughout the term of this Agreement, the Subcontractor shall neither contact nor communicate directly with the Government concerning the terms of this Agreement or matters pertaining to project management without prior written consent of ESI. All contractual communications with the Government shall be exclusively conducted by ESI personnel. Subcontractor further agrees to insert in any consultant agreement or lower-tier subcontract hereunder, provisions which shall conform substantially to the language of this Section.

## 13    NOTIFICATION OF CONFLICT OF INTEREST

In addition to the requirements of Section 12, the following provisions with regard to Subcontractor shall apply for the duration of the Subcontract.

13.1 Subcontractor agrees to notify Prime Contractor of any actual, apparent, or potential conflict of interest under this Subcontract. Notification of any conflict of interest shall include both organizational conflicts of interest (as defined in FAR Subpart 9.5) and personal conflicts of interest (which are defined as the same types of relationships as an organizational conflict of interest, but applicable to an individual).

13.2 If a personal conflict of interest exists, Subcontractor shall be disqualified from taking part in any way in the performance of the assigned work which created the conflict of interest situation.

## 14    IMPROPER INFLUENCE OF GOVERNMENT OFFICIALS

Each Party hereby represents and covenants that neither it, nor any of its employees or representatives, has or shall have, directly or indirectly, an agreement or arrangement with any official, employee, or representative of any customer or any government or government agency, or any political party under which such official, employee, or representative, or political party shall receive anything of value, whether monetary or otherwise, as a result of any actual or contemplated sale of any product of itself or any of its affiliates.

## 15    EQUAL OPPORTUNITY EMPLOYMENT

ESI is an equal opportunity employer and makes employment decisions on the basis of merit. The Subcontractor's policies must prohibit unlawful discrimination based

16

Elevated_0000148

on race, color, creed, sex, religion, sexual orientation, marital status, age, national origin, or ancestry, physical or mental disability, medical condition including genetic characteristics, or any other consideration made unlawful by Federal, State, or local laws. To the extent applicable, the provisions of 41 C.F.R. Part 60-1.4(a), 41 C.F.R. Part 60-250.5(a), 41 C.F.R. Part 60-300.5(a), and 41 C.F.R. Part 60-741.5(a), are incorporated herein by reference

## 16   TIME

Time is of the essence with respect to performance of services and delivery of deliverables under this Subcontract.

## 17   COMPLIANCE WITH APPLICABLE LAW

Subcontractor warrants and certifies that in the performance of this Subcontract, it will comply with all applicable statutes, rules, orders and regulations of the United States, and all other applicable state laws.

## 18   NOTICE OF DELAYS

If, at any time, the Government issues a stop work order, or causes any other delay to the Prime Contract, Prime Contractor shall promptly notify Subcontractor of such delay and, upon receipt of such notice in writing, Subcontractor shall immediately cease all activities under this Subcontract. After receipt of such notice, Subcontractor shall not perform any further activities under this Subcontract until such time it is told to proceed by Prime Contractor. Subcontractor shall forfeit any right for reimbursement for any and all charges or costs it incurs after it has received notice to cease activities under this Subcontract.

## 19   NON-APPROPRIATION CLAUSE

If funds are not appropriated or otherwise made available so that Prime Contractor determines it cannot continue to support the Agreement, Prime Contractor shall have the right to terminate this Agreement. Prime Contractor shall not in any event or circumstance be obligated to Subcontractor for any costs Subcontractor may have incurred following notice of termination.

## 20   GENERAL RELEASE

The acceptance by Subcontractor or any person under the direction of Subcontractor of any payment made on the final invoice under this Subcontract shall operate as and shall be a release to Prime Contractor from all claim of liability to the Subcontractor, his successors, legal representatives, and assigns for anything done or furnished under the provisions of this Agreement.

## 21   REPRESENTATIONS AND CERTIFICATIONS

17

Elevated_0000149

21.1    By executing this Subcontract, Subcontractor certifies, to the best of its knowledge, that: neither Subcontractor nor any of its principals: (1) are presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any federal agency; (2) have, within a three-year period preceding the date of this Subcontract, been convicted or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (federal, state, or local) contract or subcontract; violation of federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, violating federal criminal tax laws or receiving stolen property; (3) are presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses listed in item (2); or (4) have, within a three-year period preceding the date of this Subcontract, been notified of any delinquent federal taxes in an amount that exceeds $3,000, for which liability remains unsatisfied.

21.2    By executing this Subcontract, Prime Contractor certifies that it has received due corporate authorization to enter into this Agreement.

## 22    CAPTIONS

The captions herein are inserted solely as a matter of convenience and for purposes of reference and do not define, limit, or describe the scope of this Subcontract or the intent of any provision herein.

## 23    SEVERABILITY

If any part, term, or provision of this Subcontract shall be held void, illegal, unenforceable, or in conflict with any law of a federal, state, or local government having jurisdiction over this Subcontract, the validity of the remaining portions or provisions of this Subcontract shall not be affected thereby.

## 24    COPIES

This Subcontract Agreement is executed in duplicate, each of which shall be an original counterpart, but the two shall be deemed to constitute one and the same instrument.

## 25    ENTIRE AGREEMENT

This Subcontract and Exhibits thereto constitute the entire agreement between the Parties and supersede all prior agreements, understandings, and arrangements, oral or written, between the parties with respect to the subject matter herein. This Subcontract is binding upon and shall accrue to the benefit of the successors in interest and assignees of the respective Parties.

## 26    AMENDMENTS AND WAIVERS

This Subcontract may not be modified or amended except in writing, signed by

18

**EXHIBIT B**
**COMPENSATION**

## 1. MONTHLY COMPENSATION

Subcontractor shall be reimbursed as follows:

| Per Month | | |
|---|---|---|
| $ | 19,500 | April 1 2018 |
| $ | 20,183 | April 1 2019 |
| $ | 20,889 | April 1 2020 |
| $ | 21,620 | April 1 2021 |
| $ | 22,377 | April 1 2022 |

The Material and Labor prices above include all callback and maintenance services listed under Exhibit A and weekly PM and tests.

Diversified Elevator shall be paid within 5 business days of Elevator Service receiving payment from VA.

Elevator Service, Inc.: _____

Date: 3 - 28 - 18

DIVERSIFIED ELEVATOR SERVICE &
EQUIPMENT CO., INC: _____

Date: 3-28-18

both Parties. Either Party hereto may, by an instrument in writing, waive compliance by the other Party with any term or provision of this Subcontract on the part of such other Party. The waiver by any Party hereto of a breach of any term or provision of this Subcontract shall not be construed as a waiver of any subsequent breach.

**IN WITNESS THEREOF,** the parties have executed this Subcontract on the day and year first above written.

Elevator Service, Inc.

Diversified Elevator
Service & Equipment Co.,
Inc.

By: _____

By: _____

Title: _PRESIDENT_____

Title: _Service Manager_____

Date: _3 - 28 - 18_____

Date: _3-28-18_____

19

Elevated_0000152

**EXHIBIT A**
**SCOPE OF SERVICES**

## I.  SCOPE OF SERVICES SOLICITATION ATTACHED: 36C25018Q0036

Elevator Service, Inc.: _____

Date: ___3 - 28 - 18_____

DIVERSIFIED ELEVATOR SERVICE &
EQUIPMENT CO., INC Corporation:

Date: _____3 - 28 - 18_____

Elevated_0000153

IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT

**CHARLES KIMLER**                                                                    **PLAINTIFF**

**VS.**                                                CIVIL ACTION NO.: A240222-67

**DIVERSIFIED ELEVATOR SERVICE AND**
**EQUIPMENT COMPANY, INC.; ELEVATED**
**TECHNOLOGIES, INC., f/k/a ELEVATOR**
**SERVICE, INC.; ELEVATOR SERVICE, INC.;**
**BRYAN HERNANDEZ, AN INDIVIDUAL;**
**NIDEC; NIDEC MOTOR CORPORATION;**
**MOTION CONTROL ENGINEERING, INC.;**
**NIDEC MOTION CONTROL;**
**AND JOHN DOES A THROUGH Z**                                **DEFENDANTS**

<u>**SUMMONS**</u>

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:   Diversified Elevator Service and Equipment Company
      By And Through Its Registered Agent
      Christopher Walker
      108 Distribution Drive, Suite B
      Richland, MS 39218

**NOTICE TO DEFENDANT(S)**

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT**
**AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi 39533.  Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the 22nd day of April, 2022.

_____ Clerk

_____ County, Miss.

BY: _____ D.C.

(Seal)

**IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT**

**CHARLES KIMLER**                                    **PLAINTIFF**

**VS.**                           CIVIL ACTION NO.: *A24022267*

**DIVERSIFIED ELEVATOR SERVICE AND
EQUIPMENT COMPANY, INC.; ELEVATED
TECHNOLOGIES, INC., f/k/a ELEVATOR
SERVICE, INC.; ELEVATOR SERVICE, INC.;
BRYAN HERNANDEZ, AN INDIVIDUAL;
NIDEC; NIDEC MOTOR CORPORATION;
MOTION CONTROL ENGINEERING, INC.;
NIDEC MOTION CONTROL;
AND JOHN DOES A THROUGH Z**                    **DEFENDANTS**

<u>**SUMMONS**</u>

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:    Elevated Technologies, Inc., f/k/a Elevator Service, Inc.
       By And Through Its Registered Agent
       InCorp Services, Inc.
       302 Enterprise Dr., Suite A
       Oxford, MS 38655

**NOTICE TO DEFENDANT(S)**

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT
AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi 39533. Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the 22nd day of April, 2022.

_____ Clerk

_____ County, Miss.

BY: _____ D.C.

(Seal)

## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
### SECOND JUDICIAL DISTRICT

**CHARLES KIMLER**                                                    **PLAINTIFF**

**VS.**                                        CIVIL ACTION NO.: *A2402 22-67*

**DIVERSIFIED ELEVATOR SERVICE AND**
**EQUIPMENT COMPANY, INC.; ELEVATED**
**TECHNOLOGIES, INC., f/k/a ELEVATOR**
**SERVICE, INC.; ELEVATOR SERVICE, INC.;**
**BRYAN HERNANDEZ, AN INDIVIDUAL;**
**NIDEC; NIDEC MOTOR CORPORATION;**
**MOTION CONTROL ENGINEERING, INC.;**
**NIDEC MOTION CONTROL;**
**AND JOHN DOES A THROUGH Z**                            **DEFENDANTS**

### <u>SUMMONS</u>

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:    Elevator Service, Inc.
       By And Through Its Registered Agent
       InCorp Services, Inc.
       302 Enterprise Dr., Suite A
       Oxford, MS 38655

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT**
**AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi 39533.  Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the 22nd day of April,

2022.

_____ Clerk,

County, Miss.

BY: _____ D.C.

(Seal)

## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
## SECOND JUDICIAL DISTRICT

**CHARLES KIMLER**                                                    **PLAINTIFF**

**VS.**                                  CIVIL ACTION NO.: *A2402 22-67*

**DIVERSIFIED ELEVATOR SERVICE AND**
**EQUIPMENT COMPANY, INC.; ELEVATED**
**TECHNOLOGIES, INC., f/k/a ELEVATOR**
**SERVICE, INC.; ELEVATOR SERVICE, INC.;**
**BRYAN HERNANDEZ, AN INDIVIDUAL;**
**NIDEC; NIDEC MOTOR CORPORATION;**
**MOTION CONTROL ENGINEERING, INC.;**
**NIDEC MOTION CONTROL;**
**AND JOHN DOES A THROUGH Z**                      **DEFENDANTS**

### SUMMONS

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:   Nidec Motor Corporation
      By And Through Its Registered Agent
      C. T. Corporation System
      Flowood, MS 39232

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT**
**AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi 39533.  Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the 22nd day of _____April_____, 2022.

_____ Clerk

_____ County, Miss

BY: _____ D.C.

(Seal)

## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
## SECOND JUDICIAL DISTRICT

**CHARLES KIMLER**                                                                 **PLAINTIFF**

**VS.**                                                    CIVIL ACTION NO.: _A24022267_

**DIVERSIFIED ELEVATOR SERVICE AND**
**EQUIPMENT COMPANY, INC.; ELEVATED**
**TECHNOLOGIES, INC., f/k/a ELEVATOR**
**SERVICE, INC.; ELEVATOR SERVICE, INC.;**
**BRYAN HERNANDEZ, AN INDIVIDUAL;**
**NIDEC; NIDEC MOTOR CORPORATION;**
**MOTION CONTROL ENGINEERING, INC.;**
**NIDEC MOTION CONTROL;**
**AND JOHN DOES A THROUGH Z**                              **DEFENDANTS**

### SUMMONS

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:     Motion Control Engineering
        By And Through Its Registered Agent
        C T Corporation System
        330 N Brand Blvd., Suite 700
        Glendale, CA 91203

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT**
**AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi 39533. Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the _____ day of _____ April _____, 2022.

_____ County, Miss.

Clerk

BY: _____ D.C.

(Seal)

## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
### SECOND JUDICIAL DISTRICT

**CHARLES KIMLER**                                                              **PLAINTIFF**

**VS.**                                                       **CIVIL ACTION NO.:A2402-22-67**

**DIVERSIFIED ELEVATOR SERVICE AND
EQUIPMENT COMPANY, INC.; ELEVATED
TECHNOLOGIES, INC., f/k/a ELEVATOR
SERVICE, INC.; ELEVATOR SERVICE, INC.;
BRYAN HERNANDEZ, AN INDIVIDUAL;
NIDEC; NIDEC MOTOR CORPORATION;
MOTION CONTROL ENGINEERING, INC.;
NIDEC MOTION CONTROL;
AND JOHN DOES A THROUGH Z**                                  **DEFENDANTS**

### SUMMONS

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:     Bryan Hernandez
        1151 Judge Sekul Avenue #120
        Biloxi, MS 39530

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT
AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi  39533.  Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a

reasonable time afterward.

Issued under my hand and the seal of said Court, on this the 26th day of _April_ ,

2022.

CONNIE LADNER, CIRCUIT CLERK
HARRISON COUNTY
PO BOX 235
BILOXI MS 39533

BY: _____ Clerk

County, Miss.

(Seal)

## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
## SECOND JUDICIAL DISTRICT

**CHARLES KIMLER**                                                                   **PLAINTIFF**

**VS.**                                                          **CIVIL ACTION NO. a2402-22-67**

**DIVERSIFIED ELEVATOR SERVICE AND
EQUIPMENT COMPANY, INC.; ELEVATED
TECHNOLOGIES, INC., f/k/a ELEVATOR
SERVICE, INC.; ELEVATOR SERVICE, INC.;
BRYAN HERNANDEZ, AN INDIVIDUAL;
NIDEC; NIDEC MOTOR CORPORATION;
MOTION CONTROL ENGINEERING, INC.;
NIDEC MOTION CONTROL;
AND JOHN DOES A THROUGH Z**                                   **DEFENDANTS**

### ENTRY OF APPEARANCE

COMES NOW, JENNIFER P. BURKES, of the law firm of Reeves & Mestayer, PLLC, and enters her appearance for and on behalf of the Plaintiff, Charles Kimler, in the above styled matter, and would show unto the Court that Plaintiff has retained Jennifer P. Burkes to represent his interest in the above styled and numbered cause of action.

Respectfully submitted, this the 16th day of May, 2022.

CHARLES KIMLER, Plaintiff

BY:   */s/ Jennifer P. Burkes*
                JENNIFER P. BURKES, MSB #9420

REEVES & MESTAYER, PLLC
Matthew G. Mestayer, Esq., MSB #9646
Jennifer P. Burkes, Esq., MSB #9420
P. O. Drawer 1388
Biloxi, MS  39533
Phone: 228.374.5151
Fax: 228.374.6630
mgm@rmlawcall.com
jpb@rmlawcall.com

1

## <u>CERTIFICATE OF SERVICE</u>

I, Jennifer P. Burkes, counsel for Plaintiffs, do hereby certify that I have this day electronically filed the foregoing Entry of Appearance with the Clerk of the Court using the MEC system which sent notice to all counsel of record.

SO CERTIFIED, on this the 16th day of May, 2022.

*/s/ Jennifer P. Burkes*
Jennifer P. Burkes

REEVES & MESTAYER, PLLC
Jennifer P. Burkes, Esq., MSB #9420
P. O. Drawer 1388
Biloxi, MS  39533
Phone: 228.374.5151
Fax: 228.374.6630
jpb@rmlawcall.com

2

## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
## SECOND JUDICIAL DISTRICT

**CHARLES KIMLER**                                                    **PLAINTIFF**

**VS.**                                          CIVIL ACTION NO.: *A2402 22-67*

**DIVERSIFIED ELEVATOR SERVICE AND**
**EQUIPMENT COMPANY, INC.; ELEVATED**
**TECHNOLOGIES, INC., f/k/a ELEVATOR**
**SERVICE, INC.; ELEVATOR SERVICE, INC.;**
**BRYAN HERNANDEZ, AN INDIVIDUAL;**
**NIDEC; NIDEC MOTOR CORPORATION;**
**MOTION CONTROL ENGINEERING, INC.;**
**NIDEC MOTION CONTROL;**
**AND JOHN DOES A THROUGH Z**                               **DEFENDANTS**

<u>**SUMMONS**</u>

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:   Nidec Motor Corporation
      By And Through Its Registered Agent
      C. T. Corporation System
      Flowood, MS 39232

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT**
**AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi 39533.  Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the 22nd day of _____April_____, 2022.

_____ Clerk
_____ County, Miss.
BY: _____ D.C.

(Seal)

## PROOF OF SERVICE

| Case:<br>A240222-67 | Court:<br>CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI,<br>SECOND JUDICIAL DISTRICT | County:<br>HARRISON | Job:<br>7064507 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>CHARLES KIMLER | | Defendant / Respondent:<br>DIVERSIFIED ELEVATOR SERVICE AND EQUIPMENT COMPANY,<br>INC.; et al. | |
| Received by:<br>Quantum Process, LLC | | For:<br>Reeves & Mestayer Attorneys | |
| To be served upon:<br>NIDEC MOTOR CORPORATION c/o CT Corporation System, Registered Agent | | | |

NIDEC MOTOR CORPORATION c/o CT Corporation System, Registered Agent Name of Person or Entity Served

I, Terry Keith, served the SUMMONS, COMPLAINT AND EXHIBITS upon the person or entity named above in the manner set forth below:

**PERSONAL SERVICE.** I personally delivered copies to Matt Thibodeaux , Legal Assistant , on May 16, 2022 at 9:17 am , where I found said person(s) in the County of RANKIN MS.

Address where served: 645 LAKELAND EAST DR, STE 101, FLOWOOD, MS 39232

At the time of service I was at least 18 years of age and not a party to this action.

Personally appeared before me the undersigned authority in and for the state of County aforesaid, the within named Terry Keith who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service" are true and correct as therein stated.

Adopted effective March 1, 1985; amended effective May 2, 1985, amended March 17th 1995.

Terry Keith                         5/17/22
Terry Keith                         Date

Quantum Process, LLC
418 Pittman Rd.
Ellisville, MS 39437
(601)800-2004

ID: 7064507
Client Reference:

State of        MS
County of      Jones
Subscribed and sworn to before me, a notary public

Notary Public

Commission Expires

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 82413
BRIDGET SMITH
Commission Expires
Feb. 19, 2023
JONES COUNTY

**IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI**
**SECOND JUDICIAL DISTRICT**

**CHARLES KIMLER**                                                    **PLAINTIFF**

**VS.**                                     CIVIL ACTION NO.: _A 24022267_

**DIVERSIFIED ELEVATOR SERVICE AND**
**EQUIPMENT COMPANY, INC.; ELEVATED**
**TECHNOLOGIES, INC., f/k/a ELEVATOR**
**SERVICE, INC.; ELEVATOR SERVICE, INC.;**
**BRYAN HERNANDEZ, AN INDIVIDUAL;**
**NIDEC; NIDEC MOTOR CORPORATION;**
**MOTION CONTROL ENGINEERING, INC.;**
**NIDEC MOTION CONTROL;**
**AND JOHN DOES A THROUGH Z**                         **DEFENDANTS**

<u>**SUMMONS**</u>

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:   Motion Control Engineering
      By And Through Its Registered Agent
      C T Corporation System
      330 N Brand Blvd., Suite 700
      Glendale, CA 91203

**NOTICE TO DEFENDANT(S)**

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT**
**AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi 39533.  Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the 22nd day of _____April_____, 2022.

                                                    _____Clerk
                                                    _____County, Miss.
                                        BY: _____D.C.

(Seal)

**PROOF OF SERVICE**

| Case:<br>A240222-67 | Court:<br>CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI, SECOND JUDICIAL DISTRICT | County:<br>HARRISON | Job:<br>7064531 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>CHARLES KIMLER | | Defendant / Respondent:<br>DIVERSIFIED ELEVATOR SERVICE AND EQUIPMENT COMPANY, INC.; et al. | |
| Received by:<br>RLD Services | | For:<br>Reeves & Mestayer Attorneys | |
| To be served upon:<br>MOTION CONTROL ENGINEERING c/o CT Corporation System, Registered Agent | | | |

MOTION CONTROL ENGINEERING c/o CT Corporation System, Registered Agent Name of Person or Entity Served
I, Robert Diaz, served the SUMMONS, COMPLAINT AND EXHIBITS upon the person or entity named above in the manner set forth below:

PERSONAL SERVICE. I personally delivered copies to John Montijo, Intake Specialist, on May 16, 2022 at 10:30 am , where I found said person(s) in the County of LOS ANGELES CA.

Address where served: 330 N BRAND BLVD, STE 700, GLENDALE, CA 91203

At the time of service I was at least 18 years of age and not a party to this action.

Personally appeared before me the undersigned authority in and for the state of County aforesaid, the within named Robert Diaz who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service" are true and correct as therein stated.

Adopted effective March 1, 1985; amended effective May 2, 1985, amended March 17th 1995.

Robert Diaz

Date 5/17/22

Quantum Process, LLC
418 Pittman Rd.
Ellisville, MS 39437
(601)800-2004

ID: 7064531
Client Reference:

State of California
County of Los Angeles
Subscribed and sworn to before me, a notary public

Notary Public

02-21-2024
Commission Expires

R. E. PINEDA
Notary Public - California
Los Angeles County
Commission # 2319724
My Comm. Expires Feb 21, 2024

**IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT**

**CHARLES KIMLER**                                                              **PLAINTIFF**

**VS.**                                                **CIVIL ACTION NO.: A2402-22-67**

**DIVERSIFIED ELEVATOR SERVICE AND
EQUIPMENT COMPANY, INC.; ELEVATED
TECHNOLOGIES, INC., f/k/a ELEVATOR
SERVICE, INC.; ELEVATOR SERVICE, INC.;
BRYAN HERNANDEZ, AN INDIVIDUAL;
NIDEC; NIDEC MOTOR CORPORATION;
MOTION CONTROL ENGINEERING, INC.;
NIDEC MOTION CONTROL;
AND JOHN DOES A THROUGH Z**                              **DEFENDANTS**

<u>**SUMMONS**</u>

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:     Motion Control Engineering
        By And Through Its Registered Agent
        Corporation Service Company
        251 Little Falls Drive
        Wilmington, DE 19808

**NOTICE TO DEFENDANT(S)**

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT
AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi 39533.  Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the __25th__ day of __May__, 2022.

_Connie Ladner_ Clerk

_Harrison_ County, Miss.

BY: _Petra Sheldon_ D.C.

(Seal)

IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT

**CHARLES KIMLER**                                                     **PLAINTIFF**

**VS.**                                                 CIVIL ACTION NO.: A2402 22-67

**DIVERSIFIED ELEVATOR SERVICE AND
EQUIPMENT COMPANY, INC.; ELEVATED
TECHNOLOGIES, INC., f/k/a ELEVATOR
SERVICE, INC.; ELEVATOR SERVICE, INC.;
BRYAN HERNANDEZ, AN INDIVIDUAL;
NIDEC; NIDEC MOTOR CORPORATION;
MOTION CONTROL ENGINEERING, INC.;
NIDEC MOTION CONTROL;
AND JOHN DOES A THROUGH Z**                              **DEFENDANTS**

### SUMMONS

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:   Diversified Elevator Service and Equipment Company
      By And Through Its Registered Agent
      Christopher Walker
      108 Distribution Drive, Suite B
      Richland, MS 39218

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT
AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi 39533. Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a
reasonable time afterward.

Issued under my hand and the seal of said Court, on this the _22nd_ day of ___April___ ,
2022.

_____ Clerk
_____ County, Miss.
BY: _____ D.C.

(Seal)

## PROOF OF SERVICE

| Case: A240222-67 | Court: CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI, SECOND JUDICIAL DISTRICT | | County: HARRISON | Job: 7064404 |
|---|---|---|---|---|
| Plaintiff / Petitioner: CHARLES KIMLER | | Defendant / Respondent: DIVERSIFIED ELEVATOR SERVICE AND EQUIPMENT COMPANY, INC.; et al. | | |
| Received by: Reliable Investigations & Process Service | | For: Reeves & Mestayer Attorneys | | |
| To be served upon: DIVERSIFIED ELEVATOR SERVICE AND EQUIPMENT COMPANY c/o Christopher Walker, Registered Agent | | | | |

DIVERSIFIED ELEVATOR SERVICE AND EQUIPMENT COMPANY c/o Christopher Walker, Registered Agent Name of Person or Entity Served
I, Charles Lindsay, served the SUMMONS, COMPLAINT AND EXHIBITS upon the person or entity named above in the manner set forth below:

PERSONAL SERVICE. I personally delivered copies to DIVERSIFIED ELEVATOR SERVICE AND EQUIPMENT COMPANY c/o Christopher Walker, Registered Agent on May 16, 2022 at 1:20 pm , where I found said person(s) in the County of RANKIN MS.

Address where served: 108 DISTRIBUTION DR, STE B, RICHLAND, MS 39218

At the time of service I was at least 18 years of age and not a party to this action.

Personally appeared before me the undersigned authority in and for the state of County aforesaid, the within named Charles Lindsay who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service" are true and correct as therein stated.

Adopted effective March 1, 1985; amended effective May 2, 1985, amended March 17th 1995.

_____   MAY 1 8 2022
Charles Lindsay                              Date

Quantum Process, LLC
418 Pittman Rd.
Ellisville, MS 39437
(601)800-2004

ID: 7064404
Client Reference:

State of _MS_
County of _Rankin_

Subscribed and sworn to before me, a notary public

_____
Notary Public
_3-1-25_
Commission Expires

STATE OF MISSIS...
NOTARY PUBLIC
ID # 289851
JASON SMITH
Commission Expir
March 1, 2025
RANKIN...

IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT

**CHARLES KIMLER**                                                          **PLAINTIFF**

**VS.**                                          CIVIL ACTION NO.: _A2402 2267_

**DIVERSIFIED ELEVATOR SERVICE AND**
**EQUIPMENT COMPANY, INC.; ELEVATED**
**TECHNOLOGIES, INC., f/k/a ELEVATOR**
**SERVICE, INC.; ELEVATOR SERVICE, INC.;**
**BRYAN HERNANDEZ, AN INDIVIDUAL;**
**NIDEC; NIDEC MOTOR CORPORATION;**
**MOTION CONTROL ENGINEERING, INC.;**
**NIDEC MOTION CONTROL;**
**AND JOHN DOES A THROUGH Z**                              **DEFENDANTS**

### SUMMONS

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:   Elevator Service, Inc.
      By And Through Its Registered Agent
      InCorp Services, Inc.
      302 Enterprise Dr., Suite A
      Oxford, MS 38655

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT**
**AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi 39533. Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the 22nd day of _____April_____, 2022.

_____ Clerk

_____ County, Miss.

BY: _____ D.C.

(Seal)

PROOF OF SERVICE

| Case:<br>A240222-67 | Court:<br>CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI, SECOND JUDICIAL DISTRICT | | County:<br>HARRISON | Job:<br>7064470 |
|---|---|---|---|---|
| Plaintiff / Petitioner:<br>CHARLES KIMLER | | Defendant / Respondent:<br>DIVERSIFIED ELEVATOR SERVICE AND EQUIPMENT COMPANY, INC.; et al. | | |
| Received by:<br>Jeff Edge | | For:<br>Reeves & Mestayer Attorneys | | |
| To be served upon:<br>ELEVATOR SERVICE, INC. c/o InCorp Services, Inc., Registered Agent | | | | |

ELEVATOR SERVICE, INC. c/o InCorp Services, Inc., Registered Agent Name of Person or Entity Served

I, Jeffery Edge, served the SUMMONS, COMPLAINT AND EXHIBITS upon the person or entity named above in the manner set forth below:

PERSONAL SERVICE. I personally delivered copies to Errol Castens, Paralegal on May 18, 2022 at 12:41 pm , where I found said person(s) in the County of LAFAYETTE MS.

Address where served: 302 ENTERPRISE DR, STE A, OXFORD, MS 38655

At the time of service I was at least 18 years of age and not a party to this action.

Personally appeared before me the undersigned authority in and for the state of County aforesaid, the within named Jeffery Edge who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service" are true and correct as therein stated.

Adopted effective March 1, 1985; amended effective May 2, 1985, amended March 17th 1995.

Jeffery Edge                                          Date 5-19-2022

Quantum Process, LLC
418 Pittman Rd.
Ellisville, MS 39437
(601)800-2004

ID: 7064470
Client Reference:

State of _Mississippi_
County of _Lafayette_
Subscribed and sworn to before me, a notary public

Notary Public

Commission Expires

STATE OF MISSISSIPPI
ANDREW MILLER
NOTARY PUBLIC
ID No. 90400
MY COMMISSION EXPIRES
JULY 24, 2024
LAFAYETTE COUNTY

## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
## SECOND JUDICIAL DISTRICT

**CHARLES KIMLER**                                                          **PLAINTIFF**

**VS.**                                           CIVIL ACTION NO.: _A2402 2267_

**DIVERSIFIED ELEVATOR SERVICE AND**
**EQUIPMENT COMPANY, INC.; ELEVATED**
**TECHNOLOGIES, INC., f/k/a ELEVATOR**
**SERVICE, INC.; ELEVATOR SERVICE, INC.;**
**BRYAN HERNANDEZ, AN INDIVIDUAL;**
**NIDEC; NIDEC MOTOR CORPORATION;**
**MOTION CONTROL ENGINEERING, INC.;**
**NIDEC MOTION CONTROL;**
**AND JOHN DOES A THROUGH Z**                             **DEFENDANTS**

### SUMMONS

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:   Elevated Technologies, Inc., f/k/a Elevator Service, Inc.
By And Through Its Registered Agent
InCorp Services, Inc.
302 Enterprise Dr., Suite A
Oxford, MS 38655

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT**
**AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to

REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer

1388, Biloxi, Mississippi  39533.  Your response must be mailed or delivered within thirty (30)

days from the date of delivery of this summons and Complaint or a judgment by default will be

entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a

reasonable time afterward.

Issued under my hand and the seal of said Court, on this the _22nd_ day of _April_____,

2022.

_____ Clerk

_____ County, Miss.

BY: _____ D.C.

(Seal)

PROOF OF SERVICE

| Case: A240222-67 | Court: CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI, SECOND JUDICIAL DISTRICT | County: HARRISON | Job: 7064450 |
|---|---|---|---|
| Plaintiff / Petitioner: CHARLES KIMLER | | Defendant / Respondent: DIVERSIFIED ELEVATOR SERVICE AND EQUIPMENT COMPANY, INC.; et al. | |
| Received by: Jeff Edge | | For: Reeves & Mestayer Attorneys | |
| To be served upon: ELEVATED TECHNOLOGIES, INC. f/k/a ELEVATOR SERVICE, INC. c/o InCorp Services, Inc., Registered Agent | | | |

ELEVATED TECHNOLOGIES, INC. f/k/a ELEVATOR SERVICE, INC. c/o InCorp Services, Inc., Registered Agent Name of Person or Entity Served
I, Jeffery Edge, served the SUMMONS, COMPLAINT AND EXHIBITS upon the person or entity named above in the manner set forth below:

PERSONAL SERVICE. I personally delivered copies to Errol Castens, Paralegal on May 18, 2022 at 12:44 pm , where I found said person(s) in the County of LAFAYETTE MS.

Address where served: 302 ENTERPRISE DR, STE A, OXFORD, MS 38655

At the time of service I was at least 18 years of age and not a party to this action.

Personally appeared before me the undersigned authority in and for the state of County aforesaid, the within named Jeffery Edge who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service" are true and correct as therein stated.

Adopted effective March 1, 1985; amended effective May 2, 1985, amended March 17th 1995.

Jeffery Edge                          Date   5-19-2022

Quantum Process, LLC
418 Pittman Rd.
Ellisville, MS 39437
(601)800-2004

ID: 7064450
Client Reference:

State of   Mississippi
County of   Lafayette
Subscribed and sworn to before me, a notary public

Notary Public

Commission Expires

STATE OF MISSISSIPPI
ANDREW MILLER
NOTARY PUBLIC
ID No. 90400
MY COMMISSION EXPIRES
JULY 24, 2024
LAFAYETTE COUNTY

## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
## SECOND JUDICIAL DISTRICT

**CHARLES KIMLER**                                                    **PLAINTIFF**

**VS.**                                            **CIVIL ACTION NO.: A2402-22-67**

**DIVERSIFIED ELEVATOR SERVICE AND**
**EQUIPMENT COMPANY, INC.; ELEVATED**
**TECHNOLOGIES, INC., f/k/a ELEVATOR**
**SERVICE, INC.; ELEVATOR SERVICE, INC.;**
**BRYAN HERNANDEZ, AN INDIVIDUAL;**
**NIDEC; NIDEC MOTOR CORPORATION;**
**MOTION CONTROL ENGINEERING, INC.;**
**NIDEC MOTION CONTROL;**
**AND JOHN DOES A THROUGH Z**                        **DEFENDANTS**

### SUMMONS

STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:    Motion Control Engineering
        By And Through Its Registered Agent
        Corporation Service Company
        251 Little Falls Drive
        Wilmington, DE 19808

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You care required to mail or hand-deliver a copy of a written response to the Complaint to REEVES & MESTAYER, PLLC, Attorneys for Plaintiff(s), whose address is Post Office Drawer 1388, Biloxi, Mississippi 39533. Your response must be mailed or delivered within thirty (30) days from the date of delivery of this summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the 25th day of May, 2022.

_____ Clerk

Harrison County, Miss.

BY: _____ D.C.

(Seal)

## PROOF OF SERVICE

| Case:<br>A2402-<br>22-67 | Court:<br>CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI,<br>SECOND JUDICIAL DISTRICT | | County:<br>HARRISON | Job:<br>7154253 |
|---|---|---|---|---|
| Plaintiff / Petitioner:<br>CHARLES KIMLER | | | Defendant / Respondent:<br>DIVERSIFIED ELEVATOR SERVICE AND EQUIPMENT COMPANY,<br>INC.; et al. | |
| Received by:<br>Delaware Detective Group, LLC | | | For:<br>Reeves & Mestayer Attorneys | |
| To be served upon:<br>MOTION CONTROL ENGINEERING c/o Corporation Service Company, Registered Agent | | | | |

MOTION CONTROL ENGINEERING c/o Corporation Service Company, Registered Agent Name of Person or Entity Served
I, Stephen Kempski, served the SUMMONS, COMPLAINT, EXHIBITS A & B upon the person or entity named above in the manner set forth below:

**PERSONAL SERVICE.** I personally delivered copies to Lynanne Gares, Litigation Specialist Service Leader, on Jun 2, 2022 at 11:33 am , where I found said person(s) in the County of **NEW CASTLE** DE.

Address where served: 251 LITTLE FALLS DR, WILMINGTON, DE 19808

At the time of service I was at least 18 years of age and not a party to this action.

Personally appeared before me the undersigned authority in and for the state of County aforesaid, the within named Stephen Kempski who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service" are true and correct as therein stated.

Adopted effective March 1, 1985; amended effective May 2, 1985, amended March 17th 1995.

Stephen Kempski          Date          6-6-22

Quantum Process, LLC
418 Pittman Rd.
Ellisville, MS 39437
(601)800-2004

ID: 7154253
Client Reference:

State of Delaware
County of New Castle
Subscribed and sworn to before me, a notary public

Notary Public
Feb 3, 2024
Commission Expires

DELIA KEMPSKI
MY COMMISSION
EXPIRES
FEB 3, 2024
NOTARY PUBLIC
STATE OF DELAWARE